```
 1 │ Benjamin K. Riley (SBN 112007)
   │ HOWREY LLP
 2 │ 525 Market Street, Suite 3600
   │ San Francisco, California 94105
 3 │ Telephone: (415) 848-4900
   │ Facsimile: (415) 848-4999
 4 │
   │ Stephen D. Libowsky (*pro hac vice* to be submitted)
 5 │ HOWREY LLP
   │ 321 North Clark Street, Suite 3400
 6 │ Chicago, IL 60610
   │ Telephone: (312) 595-1239
 7 │ Facsimile: (312) 595-2250
 8 │ Attorneys for Defendant
   │ ENTERPRISE TRUST COMPANY
 9 │
```

ORIGINAL FILED

JAN 1 5 2008

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

WDB

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

RUTHE P. GOMEZ,

    Plaintiff,

vs.

TRADERIGHT CORP. d/b/a TRADERIGHT SECURITIES, INC., ENTERPRISE TRUST COMPANY, and LOCKE HAVEN, LLC,

    Defendants.

Case No. CV 08 0266

**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. 1441(b) (DIVERSITY)**

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. § 1441(b), Defendant Enterprise Trust Company ("Enterprise Trust") hereby removes to this Court the state court action described below:

1. On December 19, 2007, an action was commenced in the Superior Court of the State of California in and for the County of Alameda, entitled *Ruthe P. Gomez v. TradeRight Corp., Enterprise Trust Company, Locke Haven, LLC, and DOES 1 through 50, inclusive*, as Case Number RG07362098. A copy of the Complaint is attached hereto as Exhibit A.

HOWREY LLP

DM_US:20950646_1

2. Removal of this case is timely under 28 U.S.C. § 1446(b), as it is being filed within thirty days of Defendants' notice of the Complaint in this action.[1] Enterprise Trust first received a copy of the Complaint on December 19, 2007, the day it was filed. As of the date of this Notice of Removal, Defendant Locke Haven, LLC has not been served with process in this action.

3. As set forth in Paragraphs 4 and 5 below, this Court has original jurisdiction under 28 U.S.C. § 1332 based on diversity of citizenship.

4. <u>Total diversity</u>. Diversity jurisdiction exists if all plaintiffs have diverse citizenship from all defendants. *See* 28 U.S.C. § 1332(a)(1). The citizenship of each named party, at the time of the filing of this action, and as of the time of the filing of this Notice of Removal, is as follows:

   a. Enterprise Trust is informed and believes that Plaintiff Ruthe P. Gomez was, and still is, a citizen of the State of California.

   b. Defendant Enterprise Trust was, and still is, a corporation organized under the laws of Nevada and has its principal place of business in Henderson, Nevada.

   c. Defendant TradeRight Corporation (d/b/a TradeRight Securities, Inc.) was, and still is, a corporation organized under the laws of Florida and has its principal place of business in Lockport, Illinois.

   d. Defendant Locke Haven, LLC was, and still is, a limited liability corporation organized under the laws of the State of Illinois and has its principal place of business in Lockport, Illinois.

As to Defendant Locke Haven, LLC in particular, diversity is satisfied as long as all of Locke Haven LLC's members are diverse from Plaintiff. *See Rolling Greens MHP, L.P. v. Comcast SCH Holdings, L.L.C.*, 374 F.3d 1020, 1021-22 (11th Cir. 2004). Locke Haven, LLC is comprised of four members. As to each, their citizenship is as follows:

   a. George Dragel is a citizen and resident of the State of Illinois;

   b. Mike Rukujzo is a citizen and resident of the State of Illinois;

---

[1] Defendant TradeRight Corporation will be concurrently filing a Joinder to this Notice of Removal.

HOWREY LLP

DM_US:20950646_1

   c.  John H. Lohmeier is a citizen and resident of the State of Illinois; and

   d.  Rebecca Townsend is a citizen and resident of the State of Illinois.

Thus, none of the defendants, or the individual members of Locke Haven, LLC, are citizens of the state in which this action is pending: California. *See* Declaration of Rebecca Townsend dated January 15, 2008 ("Townsend Declaration"), ¶ 4.

  5.  **Amount in controversy.** Diversity jurisdiction exists if the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a). Plaintiff seeks injunctive relief in her Complaint. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)) (in trademark infringement case, where injunctive relief was sought, settlement letter demanding $100,000 was sufficient evidence of value of object of litigation, to satisfy amount in controversy requirement). In other words, "the amount in controversy is measured by the value of the interest sought to be protected by the equitable relief requested." *See In Re Fidelity Bank Trust Fee Litigation*, 839 F. Supp. 318, 321 (E.D. Pa. 1993); *see also Ridder Bros. v. Blethen*, 142 F.2d 395, 399 (9th Cir. 1994) (the amount of controversy must be "the value of the particular and limited thing sought to be accomplished by the action"). For example, where protection of the assets in a trust are at issue, and the object of the litigation is the removal of the trustee, the amount in controversy is measured by the value of that part of the trust that will be protected by the injunctive relief. *See Schonland v. Schonland*, 1997 WL 695517, at *1 (D. Conn. 1997). In this action, Plaintiff seeks the transfer of her accounts which are valued at approximately $900,000. *See* Townsend Decl., ¶ 5. Thus, the amount in controversy requirement is met.

  6.  Because there is original and diversity jurisdiction in this matter, this action is one that may be removed pursuant to 28 U.S.C. §§ 1332(a) and 1441(b).

  7.  Copies of all pleadings, process and orders filed with the state court — in addition to the Complaint noted in Paragraphs 1 and 2 above — are filed concurrently with this Notice of Removal and attached as Exhibit B.

-3-

8.  Written notice of the filing of this Notice of Removal is hereby given to counsel for Plaintiff Ruthe P. Gomez.

9.  A Notice to Adverse Party of Removal to Federal Court will be filed with the Clerk of the Superior Court of the State of California for the County of Alameda, and served on Plaintiff.

Dated: January 15, 2008

Respectfully submitted,

**HOWREY LLP**

By: *[signature]*
Benjamin K. Riley

Attorneys for Defendant
ENTERPRISE TRUST COMPANY

# EXHIBIT A

PATRICK BALDWIN, ESQ. (SBC # 93337)
CHRISTOPHER MADER, ESQ. (SBC # 199605)
BALDWIN LAW GROUP
530 Oak Grove Avenue, Suite 207
Menlo Park, CA 94025
Phone: (650) 326-8195
Fax:   (650) 326-0467

Attorneys for Plaintiff
Ruthe P. Gomez

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA

UNLIMITED JURISDICTION

| | |
|---|---|
| RUTHE P. GOMEZ, <br><br> Plaintiff, <br> v. <br><br> TRADERIGHT CORP. d/b/a TRADERIGHT SECURITIES, INC., ENTERPRISE TRUST COMPANY, LOCKE HAVEN, LLC, and DOES 1 through 50, inclusive, <br><br> Defendants. | CASE NO.: RG 07362098 <br><br> VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF |

COMES NOW PLAINTIFF RUTHE P. GOMEZ and alleges as follows:

### INTRODUCTION

1. PLAINTIFF RUTHE P. GOMEZ ("PLAINTIFF") brings this Action for Injunctive Relief pursuant to the requirements of the Financial Industry Regulatory Authority (hereinafter "FINRA," formerly the National Association of Securities Dealers or "NASD") and the Agreement she entered with DEFENDANTS TRADERIGHT CORP. d/b/a TRADERIGHT SECURITIES, INC (hereinafter referred to as "TRADERIGHT"), ENTERPRISE TRUST COMPANY ("ENTERPRISE"), and LOCKE HAVEN, LLC ("LOCKE HAVEN") (collectively ("DEFENDANTS").

2. PLAINTIFF entered into an Agreement with DEFENDANTS, pursuant to which all disputes relating to the Agreement are to be determined by binding arbitration before FINRA with the exception that requests for Injunctive Relief must be sought in Court.

3. PLAINTIFF filed an Arbitration Claim against DEFENDANTS at FINRA in October 2007 seeking monetary damages. FINRA Rules require a party to a pending arbitration who seeks Injunctive Relief to first seek Temporary Injunctive Order from a Court of competent jurisdiction. If a Temporary Injunctive Order is granted by the Court, the party must then seek Permanent Injunctive Relief from FINRA.

4. As further explained herein, it is necessary for PLAINTIFF to seek Injunctive Relief against DEFENDANTS. PLAINTIFF now seeks Temporary Injunctive Relief from this Court. If this Court grants PLAINTIFF the Temporary Injunctive Relief requested, PLAINTIFF intends to seek Permanent Injunctive Relief from FINRA.

## PARTIES

5. PLAINTIFF is and at all times herein mentioned was a citizen of the State of California and resided in the city Fremont, County of Alameda. PLAINTIFF is 83 years old, and an "elder" pursuant to *California Welfare and Institutions Code* § 15600, *et seq.*

6. PLAINTIFF is informed and believes and based thereon alleges that TRADERIGHT is a broker-dealer registered with FINRA. Plaintiff is informed and believes and based thereon alleges that TRADERIGHT is incorporated in the State of Florida, with its principal place of business in Lockport, Illinois. TRADERIGHT became registered as a broker-dealer with the State of California on or about May 1, 2003, and has a local representative who handles accounts and does business in California on behalf of TRADERIGHT.

7. PLAINTIFF is informed and believes and based thereon alleges that ENTERPRISE is part of Enterprise Advisory Group, which is an "Other Business Name" of TRADERIGHT. ENTERPRISE's principal place of business is in Oak Brook, Illinois. ENTERPRISE holds itself out as performing the same services and functions as a securities broker-dealer and operates as an unregistered broker-dealer.

PLAINTIFF is further informed and believes and based thereon alleges that in March of 2006 the State of Illinois, Department of Financial and Professional Regulation, issued a Cease and Desist Order to ENTERPRISE as follows, in part:

> WHEREAS, [ENTERPRISE] . . . acknowledge that the Secretary's Findings of Fact and Conclusions of Law show that [ENTERPRISE] have violated Section 2-4 of the Act [205 ILCS 620/2-4] and Section 1-9 of the Act [205 ILCS 620/1-9] . . . 1. Enterprise Trust Co. shall not use the word "trust" in its business name, including any name it operates under . . . 2. . . . Enterprise Trust Company shall not conduct any activity as a corporate fiduciary, including holding out to the public that they are available to act as a fiduciary in Illinois absent appropriate authority issued by the Secretary . . . . (Emphasis added.)

PLAINTIFF is informed and believes and based thereon alleges that as a result of the Order, ENTERPRISE established a purported "headquarters" in Henderson, Nevada. All operations are conducted, and the CEO and Vice President of ENTERPRISE maintain their offices at ENTERPRISE's Oak Brook, Illinois offices. ENTERPRISE does business in California.

8.     PLAINTIFF is informed and belies and based thereon alleges that ENTERPRISE operates as an unregistered Investment Adviser pursuant to, among other rules and statutes, 15 USC §80b-2(a)(11) and 15 USC § 80b-3.[1] ENTERPRISE also operates as an unregistered Broker-Dealer pursuant to, among other rules and statutes, 15 USC §78o.[2] ENTERPRISE promotes itself on its website as providing "innovative investment management service" that "offers [its clients] the opportunity to create the investment portfolio that is best and most suitable [], from stocks and

---

[1] The Investment Advisers Act §202(a)(11), codified in 15 USC §80b-2(a)(11) defines an Investment Adviser as "a person who, for compensation, engages in the business of advising others about securities." SEC Release IA 1092 states that registration as an Investment Adviser is required when the following three conditions are met: (1) if advice or analysis regarding securities is offered; (2) if the entity is "in the business" of giving such advice; and, (3) if the advice is provided for compensation. *California Corporations Code* §25009 defines an Investment Adviser as "any person who, for compensation, engages in the business of advising others, either directly or indirectly through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing or selling securities, or who, for compensation and as a part of a regular business, publishes analyses or reports concerning securities."

[2] The Securities Exchange Act §3(a)(4), codified in 15 USC §78c(a)(4) defines a Broker as "any person engaged in the business of effecting transactions in securities for the account of others . . . ." The Securities Exchange Act §3(a)(5), codified in 15 USC §78c(a)(5) defines a Dealer as "any person engaged in the business of buying and selling securities for his own account, through a broker or otherwise . . . ."

bonds to real estate and closely-held securities." ENTERPRISE provides fee-based investment advice, as stated on its website: "Investment Management Services: A fee of 1% or less of account value is subtracted annually for investment management services, depending on the size of the account. Period. (Some trading costs are debited to your account.)"

9. PLAINTIFF is informed and believes and based thereon alleges that LOCKE HAVEN is a purported limited liability company owned and formed by TRADERIGHT and ENTERPRISE. LOCKE HAVEN is located in Oak Brook, Illinois and uses the same business address as ENTERPRISE.

10. At all relevant times, each DEFENDANT named herein was the agent of the others in connection with all activities referenced in this Complaint and each is responsible for the activities of the others.

11. The true names and capacities, whether individual, corporate, associate or otherwise, of DEFENDANTS named as DOES 1 through 50, inclusive, are unknown to the PLAINTIFF, who therefore sue said DEFENDANTS by such fictitious names. PLAINTIFF will amend this complaint to show these DEFENDANTS' true names and capacities when the same have been ascertained. PLAINTIFF is informed and believes, and based thereon alleges, that the DEFENDANTS sued herein as DOES 1 through 50 are in some manner responsible for the actions and damages, as alleged herein.

12. PLAINTIFF is informed and believes and based thereon alleges that at all times mentioned herein, each DEFENDANT was the agent, servant, employee, or joint venture of each other and the remaining DEFENDANTS and was at all times acting within the course and scope of said agency, service, employment or joint venture. Each DEFENDANT ratified and approved the acts of each other defendant resulting in PLAINTIFF's damages as alleged further, herein.

## JURISDICTION

13. Jurisdiction is proper in this County because a contract was entered into in Alameda County, California, PLAINTIFF's accounts were transferred in California to TRADERIGHT and/or one or more of its affiliates, and performance was to be had in California. Additionally, the acts, transactions, and conduct constituting violations of law occurred in the County of Alameda, State of California.

## GENERAL ALLEGATIONS

14. Advisory Financial Consultants ("AFC") is a FINRA registered broker-dealer in Fremont, California.[3]

15. On December 20, 2006, TRADERIGHT and LOCKE HAVEN entered into an Asset Purchase Agreement with AFC, whereby AFC would transfer its client accounts to TRADERIGHT, ENTERPRISE and/or LOCKE HAVEN. Attached hereto and marked as Exhibit "A" is a true and correct copy of the Asset Purchase Agreement, which is incorporated herein by this reference.

16. Pursuant to the terms of the Asset Purchase Agreement, PLAINTIFF's brokerage accounts at AFC were transferred to DEFENDANTS. As part of the transfer, PLAINTIFF was required to sign an "Investment Agency Agreement" (hereinafter "the Agency Agreement"), which granted ENTERPRISE complete discretion over her accounts. Attached hereto and marked as Exhibit "B" is a true and correct copy of the Investment Agency Agreement which is incorporated herein by this reference. The Agency Agreement gave ENTERPRISE authority to engage in any transaction in PLAINTIFF's account. The Agency Agreement provides in relevant part as follows:

> [Enterprise] will have the following powers with respect to the assets in the account . . .
>
> To retain, invest and reinvest in assets of any kind and take other investment action it considers appropriate in its sole direction [sic] . . . depending on the type of asset, it may be held at a brokerage firm instead of our standard custodian.

---

[3] PLAINTIFF is a director, officer and shareholder of AFC.

VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF
- 5 -

To place orders for the purchase or sale of securities for the account at such price or prices, at such times and with brokers agent may select. It is possible that [Enterprise] may pay a higher brokerage commission because of the research services provided by that broker. Some of the strategies used are more active resulting in significant portfolio turnover.

. . .

To vote stock and participate in corporate reorganizations, dissolutions, liquidations or similar transactions; and hold assets in the name of a nominee or in bearer form.

. . .

The investments used by [Enterprise] may include options, inverse performance funds, venture capital, private placement securities, and real estate.

. . .

[Enterprise] shall not be liable for any loss or depreciation resulting from any action or inaction of [Enterprise] taken in good faith pursuant to the terms of this Agreement . . . [Enterprise] is specifically indemnified by Customer against loss, damage, and expense not due to its willful misconduct.

. . .

[Enterprise] is further authorized to take any other actions it believes are reasonably necessary in connection with the matter discussed above, including executing necessary documents.

17.   Rebecca Townsend, Vice President of ENTERPRISE and owner and managing member of LOCKE HAVEN, came to California, met with investors and falsely represented to PLAINTIFF, and others, that:

   a.  the Agency Agreement was a meaningless document;

   b.  that signing the Agency Agreement was a requirement to transfer her account to TRADERIGHT, ENTERPRISE and/or LOCKE HAVEN;

   c.  that the Agency Agreement was a mere legal formality without substantive effect;

and;

    d.   that TRADERIGHT, ENTERPRISE and/or LOCKE HAVEN would obtain her permission before making any changes in her account.

18.    PLAINTIFF did not understand the Agency Agreement or its significance, and DEFENDANTS, and each of them, knew that PLAINTIFF did not understand the Agency Agreement. PLAINTIFF signed the Agency Agreement because DEFENDANTS fraudulently represented that it was a requirement to transfer her accounts from AFC.

19.    Pursuant to the Agency Agreements, DEFENDANTS, and each of them, gained complete control over all of the brokerage accounts of AFC's clients, including PLAINTIFF. Upon DEFENDANTS gaining control over PLAINTIFF's accounts via the Agency Agreement they proceeded to aggregate and combine all of the accounts of AFC's clients that they had acquired, through misrepresentation, into a single account in the name and under the control of ENTERPRISE, rather than maintaining them separately in the name of each individual investor.

20.    After commingling the mutual fund accounts of AFC's clients and listing all the accounts as belonging solely to ENTERPRISE, DEFENDANTS then changed the automatic dividend reinvestment plans and began charging a fee to the commingled account that it held, for which it has never provided any accounting.

21.    There had been standing instructions in PLAINTIFF's brokerage accounts that all dividends and capital gains were to be reinvested at net asset value back into the respective mutual funds. Without notice or authorization by PLAINTIFF, DEFENDANTS canceled those standing instructions and the dividends and capital gains are now paid in cash. Those funds cannot be accounted for and it is not clear or cannot readily be determined where the cash proceeds are now located. Additionally, PLAINTIFF is no longer aware of what types of investments have been included in her accounts and whether those are suitable investments, given her age and financial situation.

22.    When PLAINTIFF or any of the former clients of AFC, a majority of whom are elderly, on a fixed income, and who require income generating investments, contacted the mutual fund

companies to obtain account information or to ascertain why they were not being paid dividends, the mutual fund companies would respond that they could not discuss the account because the individual investor was not the account holder – but rather ENTERPRISE was the account holder of the commingled account.

23. The Agency Agreement provides at Paragraph 5. (1.) that: "This Agreement may be terminated by either party upon written notice to the other. ..." On July 10th, 2007, PLAINTIFF revoked the Agency Agreement in writing. Attached hereto and marked as Exhibit "C" is a true and correct copy of the letter dated July 10, 2007, revoking the Agency Agreement, which is incorporated herein by this reference.

24. PLAINTIFF has been attempting for several months, orally and by written notice, to terminate the Agency Agreement and transfer her brokerage accounts out of TRADERIGHT and ENTERPRISE, back into her individual name. PLAINTIFF's brokerage accounts have not been transferred out of DEFENDANTS' and each of their control, despite months of effort.

25. In November 2007, PLAINTIFF's investments in Calvert New Vision Small Cap Fund and Calvert Social Investments Balanced Equity Fund were liquidated in their entirety. While the proceeds of the liquidation were forwarded to PLAINTIFF, the trade confirmations stated that her funds were held in account owned by "Enterprise Trust Company c/o Enterprise Advisory Group." Attached hereto and marked as Exhibit "D" are true and correct copies of the Calvert Funds trade confirmations which are incorporated herein by this reference.

26. After receiving the trade confirmations, PLAINTIFF again notified DEFENDANTS that she had revoked any custodial authority that DEFENDANTS held over any of her accounts, and again demanded that her funds be segregated from those of DEFENDANTS and be sent to direct holding at the respective mutual fund companies.

27. Although not authorized by her, PLAINTIFF is informed and believes and based thereon alleges that DEFENDANTS, and each of them, have charged her fees under the Agency Agreement. PLAINTIFF has requested an accounting of all amounts charged to her by ENTERPRISE in its purported capacity as Custodian of any account held by PLAINTIFF.

Requests for an accounting have been ignored and no accounting of fees charged has ever been provided.

28. DEFENDANTS, and each of them, have refused to provide an accounting or accurate information regarding PLAINTIFF's accounts. DEFENDANTS, and each of them, have made repeated errors on PLAINTIFF's account statements. PLAINTIFF was continuously receiving reports of errors and mistaken values on the accounts statements prepared by DEFENDANTS, and each of them.

29. On or about November 15, 2007, TRADERIGHT sent a letter to all of AFC'S former clients in which it stated the following: "Your former representative [PLAINTIFF] has left the business to pursue other interests." The letter also notified clients of AFC that a local service representative, Kimble Mason, had been appointed to act as their representative. Attached hereto and marked as Exhibit "E" is a true and correct copy of a sample letter that was sent to AFC'S clients which is incorporated herein by this reference. In fact, PLAINTIFF has not left the securities business, nor is she pursuing other interests.

30. PLAINTIFF is concerned about the safety of her funds previously held with DEFENDANTS — she is concerned that funds she has saved for retirement may continue to be concealed and eventually disappear.

## FIRST CAUSE OF ACTION

### Preliminary Injunctive Relief — *Code of Civil Procedure §526(a)*

(Against All Defendants)

31. PLAINTIFF repeats, realleges and incorporates herein by this reference, Paragraphs 1 through 30, inclusive, of this Complaint, as though fully set forth herein.

32. In or about January 2006, PLAINTIFF signed the Agency Agreement, which granted ENTERPRISE complete discretion over her brokerage accounts. *See,* Exhibit "B" filed herewith. Unknown to PLAINTIFF, the Agency Agreement gave ENTERPRISE complete authority to engage in any transaction in PLAINTIFF's account.

33.     Upon ENTERPRISE's gaining control over PLAINTIFF's accounts via the Agency Agreement, DEFENDANTS, and each of them, aggregated and combined all of the accounts of AFC's clients, that it had acquired, through misrepresentation, into a single account, rather than maintaining them separately in the name of each individual investor. DEFENDANTS commingled the accounts and listed all the accounts as belonging solely to ENTERPRISE at all the mutual fund companies where investments were held. DEFENDANTS then changed the automatic dividend reinvestment plans and began charging a fee to the commingled account that it held, for which it has never provided any accounting.

34.     When PLAINTIFF or any of the former clients of AFC — a majority of whom are elderly, on a fixed income, and who require income generating investments — contacted mutual fund companies to obtain account information or to ascertain why they were not being paid dividends, the mutual fund companies would respond that they could not discuss the account because the individual investor was not the account holder – but rather ENTERPRISE was the account holder of the commingled account. All of the dividends were cashed out, and PLAINTIFF is unaware of where they are located or how they are being held.

35.     The Agency Agreement provides that it may be terminated by either party upon written notice to the other. *See,* Exhibit "B" filed herewith. On July 10, 2007, PLAINTIFF revoked the Agency Agreement in writing. *See,* Exhibit "C" filed herewith.

36.     PLAINTIFF has been attempting for several months, since July 2007, orally and by written notice, to terminate the Agency Agreement and transfer her brokerage accounts out of DEFENDANTS, and back into her individual name. PLAINTIFF's brokerage accounts have not been transferred out of DEFENDANTS and each of their control, despite months of effort. DEFENDANTS and each of them, have refused and failed to transfer the accounts that belong to PLAINTIFF back into her name.

37.     The November 2007 trade confirmations related to PLAINTIFF's Calvert Funds stated that the account was held by "Enterprise Trust Company c/o Enterprise Advisory Group." *See,* Exhibit "D" filed herewith.

38. On or about November 15, 2007, TRADERIGHT sent a letter to all of AFC'S former clients in which it stated that PLAINTIFF has left the securities business to pursue other interests. *See* Exhibit "E" filed herewith. PLAINTIFF has not left the securities business and has demanded that DEFENDANTS refrain from sending communications to former clients that PLAINTIFF has left the business. DEFENDANTS, and each of them, have failed and refused to cease and desist from doing so.

39. PLAINTIFF is elderly — 83 years old — and requires dividends and interest from her accounts to meet her needs. PLAINTIFF has repeatedly demanded that her accounts be transferred back to her, that the Agency Agreement be revoked and terminated and that her monies be returned to her. DEFENDANTS, and each of them, refuse to return the accounts into PLAINTIFF's name, so she can monitor her accounts and direct her investments. DEFENDANTS, and each of them, have refused and still refuse to refrain from their wrongful conduct.

40. DEFENDANTS' wrongful conduct, unless and until enjoined and restrained by Order of this Court, will cause great and irreparable injury to PLAINTIFF as PLAINTIFF's investment will lose value due to improper investments and charges and fees that are being imposed by DEFENDANTS, without any accounting, and further due to the fact that dividends are not being reinvested, as had been PLAINTIFF's standing order for her accounts. Additionally, DEFENDANTS' statements to PLAINTIFF's former clients that she is no longer in the business has caused her elderly clients considerable distress and they feel abandoned.

41. PLAINTIFF has no adequate remedy at law for the injuries currently being suffered or that are threatened in that it will be impossible for PLAINTIFF to determine the precise amount of damage that she will suffer if DEFENDANTS' conduct is not restrained.

42. PLAINTIFF will continue to be damaged so long as DEFENDANTS' and each of their conduct continues, and DEFENDANTS retain control over PLAINTIFF's accounts, which have now been commingled with the accounts of AFC'S other clients, and are being held in the name of the DEFENDANTS, who exercise complete control and dominion over those accounts.

WHEREFORE, PLAINTIFF prays for judgment as hereinafter set forth.

1. For Order requiring DEFENDANTS to show cause, if any they have, why they should not be enjoined or commanded as set forth in this Complaint, during the pendency of this Action;

2. For a Temporary Restraining Order enjoining or commanding DEFENDANTS, and each of them, and their agents, servants, and employees, and all persons acting under, in concert with, or for them:

   a. From exercising control over any and all accounts belonging to PLAINTIFF RUTHE P. GOMEZ;

   b. From charging any fees or commissions to any accounts belonging to PLAINTIFF RUTHE P. GOMEZ;

   c. From cashing any dividends which should be payable to the accounts belonging to PLAINTIFF RUTHE P. GOMEZ;

   d. From sending any correspondence or communication to clients of AFC to the effect that their former representative, PLAINTIFF RUTHE P. GOMEZ, is no longer in the securities business;

   e. From commingling PLAINTIFF RUTHE P. GOMEZ's account with accounts of other clients of AFC;

   f. That all accounts owned by PLAINTIFF RUTHE P. GOMEZ be transferred out of the name of Defendant TRADERIGHT, or other affiliated entity, be immediately segregated, and placed in the name of PLAINTIFF RUTHE P. GOMEZ, alone, at any mutual funds.

   g. That all mutual funds by PLAINTIFF RUTHE P. GOMEZ be placed immediately on automatic dividend reinvestment, as they had been before DEFENDANTS, and each of them, took control of those accounts.

   h. That all individual stocks in the name of PLAINTIFF RUTHE P. GOMEZ be transferred immediately to AG Edwards & Sons, Inc., One North Jefferson, St. Louis, Missouri, 63103.

3. For costs of suit incurred in this Action;

4. For reasonable attorney's fees if permitted by contract or statute.

5. For such other and further relief as the Court deems proper.

Dated: December 18, 2007

BALDWIN LAW GROUP

By: /s/
Patrick Baldwin
Christopher Mader
Attorneys for Plaintiff
RUTHE GOMEZ

VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF
- 13 -

**VERIFICATION**
(Standard) C.C.P. Sections 446 and 2015.5

I, Ruthe P. Gomez, declare that:

I am the Plaintiff in the above-entitled action and have read the foregoing **VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF** and know the contents thereof; the same is true of my own knowledge, except as to those matters which are therein stated upon my information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California, that the foregoing is true and correct, and that this verification was executed by me on December ___, 2007, at Fremont, California.

*/s/ Ruthe P. Gomez*
RUTHE P. GOMEZ
PLAINTIFF

VERIFICATION TO COMPLAINT

EXHIBIT A