TradeRight Securities
"Together We Can"™
Member FINRA and SIPC

8 E 9TH STREET
LOCKPORT, IL 60441
815-306-6000

Trade Confirmation

Settlement Date: 11/29/07
Account Number: 15039558
Introducing Broker: 1193

TRADERIGHT SECURITIES
(815)306-5000
8 E 9TH STREET
SUITE 1A
LOCKPORT, IL 60441

ENTERPRISE TRUST COMPANY
C/O ENTERPRISE ADVISORY GROUP
601 ENTERPRISE DRIVE STE 200
OAKBROOK IL 60523-4202

Your introducing broker is pleased to confirm the following sale transaction

| Date | Description | Symbol | | Quantity | Price |
|------|-------------|--------|---|----------|-------|
| 11/26/07 | CALVERT LLD NEW VISION SMALL CAP FD CL A | CNVAX | 131582850 | 1,446.4960 | 15.8200 |

| | |
|---|---|
| Principal: | $22,883.57 |
| Commission: | $15.00 |
| Net Amount: | $22,868.57 |

Your introducing broker capacity:
AS AGENT FOR YOU AND FOR YOUR ACCOUNT AND RISK ON THE
OVER-THE-COUNTER MARKET.
WE WILL FURNISH THE NAME OF THE OTHER PARTY AND THE
TIME OF EXECUTION ON REQUEST.

Special remarks for this transaction:
UNSOLICITED

Subject to terms on reverse side. Please retain for your records.
CLEARED THROUGH
Legent Clearing • 9300 Underwood Avenue, Suite 400 • Omaha, NE 68114 • 402-384-6101
www.legentclearing.com
Member FINRA & SIPC

**EXHIBIT** E



RADE *Right Securities*
*"together we can"*
MEMBER NASD & SIPC

(815)308-5000
123 E. 9" Street, 1A, Lockport, IL 60441

November 15, 2007

LESTER CLARK & BETTY CLARK
1378 CHICONE AVE
HAYWARD CA 94544-7466

Dear Investor,

You may have noticed my name on your recent mutual fund statements as your representative. I wanted introduce myself to you. Your former representative has left the business to pursue other interests. I have been assigned your account(s) to my care. By way of introduction, I wanted to make certain that you have all the necessary contact information available for our office. Knowledgeable, experienced and professional staff of TradeRight Securities are always available to help service your account(s).

In the event you have any questions that may arise regarding your account(s) or other financial matters, please do not hesitate to contact us. We pride ourselves on being able to provide superior customer service. We're a full service brokerage firm equipped to offer clients financial services beyond mutual funds ranging from individual stock & bond accounts and insurance services to advisory services and financial planning.

So if you have any questions at all, please do not hesitate to contact our office at 1-800-308-3938.

**Personalized Service In Your Backyard**

I would also like to introduce you to local service representative. His name is *Kimble* *"Kim" Mason*. Kim is an industry veteran, bringing you more then 30 years of experience. Kim has broad knowledge of the financial markets and often helps individuals navigate through the life stages of investing.

One of the most important factors in reaching your financial goals is to review your investment portfolio on a regular basis. Depending on who you talk to you'll hear you should review your holdings semi annually or annually. There is no magic number but we can certainly tell you that regular portfolio reviews are highly recommended. Certainly, we can all agree that our life objectives change... marriage, children, college planning, retirement, long term care. These are all considerations that can be effectively planned for with proper forethought. He has helped many clients plan for their for their future needs.

Kim is a        ble for consultation at your convenie         . He will be calling you in the near future to introduce himself as your regional representative. If you'd like to speak with Kim sooner, please call us at 800-308-3938 and we'll put you in touch with him. Or, of course, you can call TradeRight Securities, Inc's home office as we stand ready to assist you as well.

Your satisfaction is priority one. Please feel free to call our office at anytime should you have any questions.

Sincerely

George Drapel

George Drapel
Financial Consultant
Vice President of Marketing
TradeRight Securities, Inc.
1-800-389-3839

# EXHIBIT

# B

1   PATRICK BALDWIN, ESQ. (SBC # 93337)
2   CHRISTOPHER MADER, ESQ. (SBC # 199605)
    BALDWIN LAW GROUP
3   530 Oak Grove Avenue, Suite 207
    Menlo Park, CA 94025
4   Phone: (650) 326-8195
    Fax:    (650) 326-0467
5
    Attorneys for Plaintiff
6   RUTHE GOMEZ

7

8               SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                          COUNTY OF ALAMEDA

10                        UNLIMITED JURISDICTION

11
    RUTHE P. GOMEZ,                    )   CASE NO.:
12                                     )
              Plaintiff,               )   *EX PARTE* APPLICATION FOR
13                                     )   TEMPORARY RESTRAINING ORDER
    v.                                 )   AND ORDER TO SHOW CAUSE RE
14                                     )   PRELIMINARY INJUNCTION
    TRADERIGHT CORP. d/b/a TRADERIGHT  )
15  SECURITIES, INC., ENTERPRISE TRUST )
    COMPANY, LOCKE HAVEN, LLC, and     )   HEARING DATE: December 19, 2007
16  DOES 1 through 50, inclusive,      )   TIME: 1:30 pm
                                       )   DEPT: 31
17            Defendants.              )
                                       )   ACTION FILED: December 19, 2007
18                                     )
                                       )
19  _____)

20          PLAINTIFF RUTHE P. GOMEZ ("PLAINTIFF") requests that the Court grant a

21  Temporary Restraining Order and Preliminary Injunction, restraining and enjoining

22  DEFENDANTS TRADERIGHT CORP. d/b/a TRADERIGHT SECURITIES, INC., ENTERPRISE

23  TRUST COMPANY, LOCKE HAVEN, LLC, (collectively referred to herein as

24  "DEFENDANTS") and each of them, and their agents, servants, and employees, and all persons

25  acting under, in concert with, or for them, from:

26          1.      Exercising control over any and all accounts belonging to

27                  PLAINTIFF;

28          2.      Charging any fees or commissions to any accounts belonging to

    EX PARTE APPLICATION IN SUPPORT OF T.R.O. AND CERTIFICATION RE: NOTICE
                                    - 1 -

PLAINTIFF;

3.   Sending any correspondence or communication to clients of AFC to the effect that their former representative, PLAINTIFF, is no longer in the securities business; and,

4.   Commingling PLAINTIFF's account with accounts of other clients of AFC.

PLAINTIFF requests that the Court grant a Preliminary Injunction commanding DEFENDANTS and each of them, and their agents, servants, and employees, and all persons acting under, in concert with, or for them to:

1.   Transfer all accounts owned by PLAINTIFF out of the name of DEFENDANT, or other affiliated entity, and immediately segregate the funds of PLAINTIFF, and place them in the name of PLAINTIFF, alone, at any mutual funds;

2.   Place immediately on automatic dividend reinvestment, all mutual funds owned by PLAINTIFF be, as they had been before DEFENDANTS, and each of them, took control of those accounts; and,

3.   Transfer all individual stocks in the name of PLAINTIFF immediately to AG Edwards & Sons, Inc., One North Jefferson, St. Louis, Missouri, 63103.

This Application is made on the grounds that:

(a)   Unless the conduct of DEFENDANTS is enjoined by an order of this Court, great and irreparable injury will result to PLAINTIFF. *Code of Civil Procedure* §§526(a) and 527(c)(1);

(b)   Unless the conduct of DEFENDANTS is enjoined by an order of this Court, DEFENDANTS will continue to engage in conduct that is in violation of the rights of PLAINTIFF and an eventual Award rendered in favor of PLAINTIFF may be ineffectual. *Code of Civil Procedure* §526(a)(3);

(c)   Pecuniary compensation would not afford adequate relief to PLAINTIFF.

*Code of Civil Procedure* §526(a)(4);

(d)     It would be extremely difficult to ascertain the amount of compensation which would afford adequate relief, in that loss or damage to PLAINTIFF's business will be difficult to quantify, since DEFENDANTS have failed and refused to provide an accounting for fees and commissions charged and have commingled PLAINTIFF's accounts with those of its other clients and transferred all accounts into DEFENDANTS' name. *Code of Civil Procedure* § 526(a)(5);

(e)     It is necessary to prevent a multiplicity of proceedings. *Code of Civil Procedure* §526(a)(6);

(f)     DEFENDANTS are engaging in a breach of trust as to PLAINTIFF, which breach should be restrained. *Code of Civil Procedure* §526(a)(7);

(g)     PLAINTIFF has no adequate remedy at law for the injuries currently being suffered in that money damages cannot be measured, and it will be impossible to determine the precise amount of damages that PLAINTIFF will suffer, if DEFENDANTS' conduct is not restrained.

(h)     Balancing the equities, PLAINTIFF, an elderly person, aged 83 years, will suffer greater hardship if defendant is permitted to assert complete control over her monies, which she has diligently saved over the years.

The Temporary Restraining Order is made *Ex-Parte* on the further ground that great and irreparable injury will result to PLAINTIFF before the matter can be heard on notice.

This Application is based on the Verified Complaint on file in this case, on the Declaration of PLAINTIFF and Exhibits thereto and Declaration of Christopher Mader, Esq. and Exhibits thereto filed herewith, on the Memorandum of Points and Authorities filed in support of this Application, on the Certification Re: Notice, and on the complete file and record in this action.

Dated: December    2007

BALDWIN LAW GROUP

By:
Patrick Baldwin
Christopher Mader
Attorneys for Plaintiff
RUTHE GOMEZ

PATRICK BALL, ESQ. (SBC #93337)
CHRISTOPHER MADER, ESQ. (SBC #199605)
BALDWIN LAW GROUP
530 Oak Grove Avenue, Suite 207
Menlo Park, CA 94025
Phone: (650) 326-8195
Fax:   (650) 326-0467

ORIGINAL

Attorneys for Plaintiff
RUTHE GOMEZ

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF ALAMEDA

### UNLIMITED JURISDICTION

| | |
|---|---|
| RUTHE P. GOMEZ, | ) CASE NO.: |
|       Plaintiff, | ) |
| v. | ) **MEMORANDUM OF POINTS AND** |
| | ) **AUTHORITIES IN SUPPORT OF EX** |
| TRADERIGHT CORP. d/b/a TRADERIGHT | ) **PARTE APPLICATION FOR** |
| SECURITIES, INC., ENTERPRISE TRUST | ) **TEMPORARY RESTRAINING ORDER** |
| COMPANY, LOCKE HAVEN, LLC, and | ) **AND MOTION FOR PRELIMINARY** |
| DOES 1 through 50, inclusive, | ) **INJUNCTION — *CODE OF CIVIL*** |
| | ) ***PROCEDURE §§526 AND 527*** |
|       Defendants. | ) |
| | ) HEARING DATE: December 19, 2007 |
| | ) TIME:  1:30 pm |
| | ) DEPT:  31 |
| | ) |
| | ) ACTION FILED: December 19, 2007 |
| | ) |

TABLE OF CONTENTS

PAGE

I.    INTRODUCTION ................................................................ 1

II.   GOOD CAUSE EXISTS TO GRANT TEMPORARY RESTRAINING
      ORDER AND PRELIMINARY INJUNCTION .............................. 2

III.  FACTS .......................................................................... 3

      A.   PLAINTIFF SEEKS INJUNCTIVE RELIEF IN THIS FORUM
           PURSUANT TO FINRA RULES AND HER AGREEMENT WITH
           DEFENDANTS ............................................................. 3

      B.   THE ASSET PURCHASE AGREEMENT ............................... 3

      C.   THE ASSET PURCHASE AGREEMENT AND FINRA RULES
           REQUIRE THAT PLAINTIFF SEEK INJUNCTIVE RELIEF IN
           THIS FORUM ................................................................ 3

      D.   THE AGENCY AGREEMENT ........................................... 4

      E.   PLAINTIFF TERMINTATES THE AGENCY AGREEMENT ......... 7

      F.   PLAINTIFF UNSUCCESSFULLY ATTEMPTS TO REMOVE HER
           ACCOUNTS FROM DEFENDANTS' CUSTODY AND CONTROL ... 7

      G.   TRADERIGHT MISREPRESENTS PLAINTIFF'S STATUS TO HER
           CUSTOMERS ................................................................ 8

IV.   ARGUMENT .................................................................... 9

      A.   THIS COURT IS EMPOWERED TO GRANT A PRELIMINARY
           INJUNCTION WHEN SUFFICIENT GROUNDS EXIST ............ 9

      B.   A PRELIMINARY INJUNCTION WILL ISSUE WHERE IT
           APPEARS THAT THE PLAINTIFF IS ENTITLED TO THE RELIEF
           SOUGHT ..................................................................... 10

      C.   A PRELIMINARY INJUNCTION WILL ISSUE WHERE AN ACT
           WOULD PRODUCE GREAT OR IRREPARABLE INJURY TO
           A PARTY ..................................................................... 11

      D.   A PRELIMINARY INJUNCTION SHOULD BE ISSUED WHEN A
           PARTY'S ACT WOULD TEND TO RENDER THE JUDGMENT
           INEFFECTUAL ................................................................ 12

E.  A PRELIMINARY INJUNCTION WILL ISSUE WHERE PECUNIARY
COMPENSATION WOULD NOT AFFORD ADEQUATE RELIEF .......... 12

F.  A PRELIMINARY INJUNCTION WILL ISSUE WHERE IT WOULD
BE EXTREMELY DIFFICULT TO ASCERTAIN THE AMOUNT OF
COMPENSATION WHICH WOULD AFFORD ADEQUATE RELIEF .... 12

G.  THE COURT IS ENTITLED TO BALANCE THE RESPECTIVE
EQUITIES OF THE PARTIES IN CONNECTION WITH ISSUING A
PRELIMINARY INJUNCTION ....................................... 13

V.  CONCLUSION ........................................................ 14

# TABLE OF AUTHORITIES

**CASES**                                                                                 PAGE

*Blankenheim v. E.F. Hutton & Co.* (1990) 217 Cal. App. 3d 1463                          10, 11

*Dingley v. Buckner* (1909) 11 Cal. App. 181                                             10, 11

*Duffy v. Cavalier* (1989) 215 Cal. App. 3d 1517                                         11

*Heckmann v. Ahmanson* (1985) 168 Cal. App. 3d 119                                       12

*Lenard v. Edmonds* (1957) 151 Cal. App. 2d 764                                          12

*McMullen v. Glenn-Colusa Irr. Dist.* (1936) 17 Cal.App.2d 696                           13

*Rossi v. Rossi* (1955) 134 Cal. App. 2d 639                                             12

*San Francisco Newspaper Printing Co. v. Superior Court* (1985) 170 Cal. App 3d 438      10

*Southern Christian Leadership Conference v. Al Malaikah Auditorium Co.* (1991)          10
230 Cal. App. 3d 207

*Twomey v. Mitchum, Jones & Templeton, Inc.* (1968) 262 Cal. App. 2d 690                 11

*Union Oil Co. v. Domengeaux* (1939) 30 Cal. App. 2d 266                                 13

*Volpicelli v. Jared Sydney Torrance Memorial Hosp.* (1980) 109 Cal. App. 3d 242         12

**STATUTES**

*Code of Civil Procedure* §526(a)                                                        9

*Code of Civil Procedure* §526(a)(1)                                                     10

*Code of Civil Procedure* §526(a)(2)                                                     2, 11, 12

*Code of Civil Procedure* §526(a)(3)                                                     2, 12

*Code of Civil Procedure* §526(a)(4)                                                     2, 12

*Code of Civil Procedure* §526(a)(5)                                                     2

*Code of Civil Procedure* §527                                                           2

## I.    INTRODUCTION

PLAINTIFF RUTH B. P. GOMEZ ("PLAINTIFF") requests that the Court grant a Temporary Restraining Order and Preliminary Injunction, restraining and enjoining DEFENDANTS TRADERIGHT CORP. d/b/a TRADERIGHT SECURITIES, INC., ENTERPRISE TRUST COMPANY, LOCKE HAVEN, LLC, (collectively referred to herein as "DEFENDANTS") and each of them, and their agents, servants, and employees, and all persons acting under, in concert with, or for them, from:

1.    Exercising control over any and all accounts belonging to PLAINTIFF;

2.    Charging any fees or commissions to any accounts belonging to PLAINTIFF;

3.    Commingling PLAINTIFF's account with accounts of other clients of AFC; and,

4.    Sending any correspondence or communication to clients of AFC to the effect that their former representative, PLAINTIFF, is no longer in the securities business.

PLAINTIFF requests that the Court grant a Preliminary Injunction commanding DEFENDANTS and each of them, and their agents, servants, and employees, and all persons acting under, in concert with, or for them to:

1.    Transfer all accounts owned by PLAINTIFF out of the name of DEFENDANT, or other affiliated entity, and immediately segregate the funds of PLAINTIFF, and place them in the name of PLAINTIFF, alone, at any mutual funds;

2.    Place immediately on automatic dividend reinvestment, all mutual funds owned by PLAINTIFF, as they had been before DEFENDANTS took control over PLAINTIFF's accounts; and,

3.    Transfer all individual stocks in the name of PLAINTIFF immediately to AG Edwards & Sons, Inc., One North Jefferson, St. Louis, Missouri, 63103.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF T.R.O. AND PRELIMINARY INJUNCTION
- 1 -

Essentially, all that PLAINTIFF is seeking is to have her own accounts restored into her own name, prevent DEFENDANTS from commingling her funds with those of other clients, and to restore control of her personal accounts back to her.

## II.    GOOD CAUSE EXISTS TO GRANT TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Good cause exists for granting a Preliminary Injunction and Temporary Restraining Order on the following grounds set forth in *Code of Civil Procedure* §§526 and 527:

(a)    Unless the conduct of DEFENDANTS is enjoined by an order of this court, great and irreparable injury will result to the PLAINTIFF. Because DEFENDANTS have transferred PLAINTIFF's assets into their own name and commingled them with others, DEFENDANTS could easily move those funds offshore. *Code of Civil Procedure* §526(a)(2).

(b)    Unless the conduct of DEFENDANTS is enjoined by an order of this court, DEFENDANTS will continue to engage in conduct that is in violation of the rights of PLAINTIFF. *Code of Civil Procedure* §526(a)(3).

(c)    Pecuniary compensation would not afford adequate relief to PLAINTIFF. *Code of Civil Procedure* §526(a)(4).

(d)    It would be extremely difficult to ascertain the amount of compensation which would afford adequate relief, in that loss or damage to PLAINTIFF's accounts will be difficult to quantify, since DEFENDANTS, despite numerous requests, have failed and refused to provide an accounting of PLAINTIFF's funds, and have commingled PLAINTIFF's accounts with those of its other clients and transferred all accounts into DEFENDANTS' names. *Code of Civil Procedure* § 526(a)(5).

PLAINTIFF has no adequate remedy at law for the injuries currently being suffered in that money damages cannot be measured, and it will be impossible to determine the precise amount of damages that PLAINTIFF will suffer, if DEFENDANTS' conduct is not restrained.

PLAINTIFF, an elderly person, aged 83 years, will suffer greater hardship if DEFENDANTS are permitted to assert control over her monies, representing the bulk of her net worth.

III.   FACTS

## A.   PLAINTIFF SEEKS INJUNCTIVE RELIEF IN THIS FORUM PURSUANT TO FINRA RULES AND HER AGREEMENT WITH DEFENDANTS

PLAINTIFF brings the underlying Action and this Motion for Injunctive Relief in this forum pursuant to the Agreement she entered with DEFENDANTS and the requirements of the Financial Industry Regulatory Authority (hereinafter "FINRA," formerly the National Association of Securities Dealers or "NASD"). Once this Court has granted Preliminary Injunctive Relief, the matter is immediately referred to FINRA for further determination regarding whether the relief shall be granted permanently.

## B.   THE ASSET PURCHASE AGREEMENT

On December 20, 2006, TRADERIGHT and LOCKE HAVEN entered into an Asset Purchase Agreement with AFC[1], whereby AFC transferred its client accounts to DEFENDANTS.[2] Pursuant to the terms of the Asset Purchase Agreement and as part of the overall transaction, PLAINTIFF's brokerage accounts at AFC were transferred to DEFENDANTS.[3] PLAINTIFF then became a registered representative of TRADERIGHT.

## C.   THE ASSET PURCHASE AGREEMENT AND FINRA RULES REQUIRE THAT PLAINTIFF SEEK INJUNCTIVE RELIEF IN THIS FORUM

Pursuant to Paragraph 22 of the Asset Purchase Agreement, all disputes relating to the Agreement are to be determined by binding arbitration before FINRA *with the exception that requests for Injunctive Relief must be sought in Court.* In October 2007 PLAINTIFF filed an

---

[1]   Advisory Financial Consultants, Inc. ("AFC") is a FINRA registered broker-dealer in Fremont, California of which PLAINTIFF is a director, officer and shareholder. *See,* Declaration of PLAINTIFF.

[2]   Attached to the accompanying Declaration of PLAINTIFF and marked as Exhibit "A" is a true and correct copy of the Asset Purchase Agreement, which is incorporated herein by this reference.

[3]   *See,* Declaration of PLAINTIFF.

Arbitration Claim against DEFENDANTS at FINRA related to the Asset Purchase Agreement and other matters.[4]   FINRA Rules require a party to a pending arbitration who seeks Injunctive Relief to first seek Temporary Injunctive Order from a Court of competent jurisdiction — if a Temporary Injunctive Order is granted by the Court, the party must then seek Permanent Injunctive Relief from FINRA.

FINRA Rule 13804, **"Temporary Injunctive Orders; Requests for Permanent Injunctive Relief"** describes the procedure by which parties to FINRA Arbitration proceedings may seek injunctive relief.  Parties first seek a Temporary Injunctive Order from a Court of competent jurisdiction.  At the same time, the moving party files with the FINRA Director of Arbitration a Statement of Claim requesting Permanent Injunctive relief with respect to the same dispute.  If the Court issues a Temporary Injunctive Order, an Arbitration Hearing before FINRA on the request for permanent injunctive relief will begin within 15 days of the date the Court issues the Temporary Injunctive Order.[5]

D.        **THE AGENCY AGREEMENT**

As part of the transfer of AFC's client accounts, as well as PLAINTIFF's own personal accounts, to DEFENDANTS, PLAINTIFF *was defrauded into signing* an "Investment Agency Agreement" (hereinafter "the Agency Agreement"), which granted ENTERPRISE complete discretion and control over her accounts.[6]  The Agency Agreement provides in relevant part as follows:

[Enterprise] will have the following powers with respect to the assets in the account . . .

---

4 *See,* Declaration of PLAINTIFF.

5 *See,* Declaration of Christopher F. Mader, Esq.

6    Attached to the accompanying Declaration of PLAINTIFF and marked as Exhibit "B" is a true and correct copy of the Investment Agency Agreement which is incorporated herein by this reference.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF T.R.O. AND PRELIMINARY INJUNCTION

2    To retain, invest and reinvest in assets of any kind and take other investment

3    action it considers appropriate in its sole direction [sic] ... depending on the

4    type of asset, it may be held at a brokerage firm instead of our standard custodian.

5    To place orders for the purchase or sale of securities for the account at such

6    price or prices, at such times and with brokers agent may select.

7

8    The investments used by [Enterprise] may include options, inverse

9    performance funds, venture capital, private placement securities, and

10   real estate.

     . . .

11   [Enterprise] is further authorized to take any other actions it believes

12   are reasonably necessary in connection with the matter discussed above,

13   including executing necessary documents.

14       Rebecca Townsend, Vice President of ENTERPRISE and owner and managing member

15   of LOCKE HAVEN, came to California, met with AFC clients and falsely represented to

16   PLAINTIFF, and others, that (1) the Agency Agreement was a meaningless document; (2) signing

17   the Agency Agreement was a requirement to transfer her account to DEFENDANTS; (3) the

18   Agency Agreement was a mere legal formality without substantive effect; and, (4) DEFENDANTS

19   would obtain her permission before making any changes in her account.  PLAINTIFF signed the

20   Agency Agreement because **DEFENDANTS fraudulently represented that it was a**

21   **requirement to transfer her accounts from AFC to TRADERIGHT.** [7]

22       Further, knowing that PLAINTIFF did not understand the Agency Agreement, and

23   knowing she did not have counsel, **DEFENDANTS fraudulently convinced PLAINTIFF to have**

24   **all her clients sign the Agency Agreement resulting in DEFENDANTS fraudulently obtaining**

25   **control over hundreds of accounts, many belonging to elderly clients of PLAINTIFF.** [8]

26

27   [7]    *See,* Declaration of PLAINTIFF.

28   [8]    *See,* Declaration of PLAINTIFF.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF T.R.O. AND PRELIMINARY INJUNCTION

Once DEFENDANTS' gained control over PLAINTIFF's accounts via the Agency Agreement they proceeded to aggregate and combine all of the accounts of AFC's clients that they had acquired, through misrepresentation, into a single account in the name and under the control of ENTERPRISE, rather than maintaining them separately in the name of each individual investor.[9]

After commingling the mutual fund accounts of AFC's clients and listing all the accounts as belonging solely to ENTERPRISE, DEFENDANTS then terminated the automatic dividend reinvestment plans and, upon information and belief, began charging a fee to the commingled account that it held, for which it has never provided any accounting.[10]

There had been standing instructions in PLAINTIFF's brokerage accounts (and those of all her clients, numbering in the hundreds) that all dividends and capital gains were to be reinvested at net asset value back into the respective mutual funds.  Without notice or authorization by PLAINTIFF, DEFENDANTS canceled those standing instructions and the dividends and capital gains are now paid in cash.  **Those funds cannot be accounted for** and it is not clear or cannot readily be determined where the cash proceeds are now located.  PLAINTIFF's former clients have attempted to revoke the Agency Agreement and regain control over their accounts — either without success or only after months of effort.[11]  PLAINTIFF's former clients, many of whom are elderly, are facing the same difficulties as PLAINTIFF.

When PLAINTIFF contacted the mutual fund companies to obtain account information or to ascertain why they were not being paid dividends, the mutual fund companies informed PLAINTIFF that they could not respond because the individual investor was not the account holder — but rather ENTERPRISE was the account holder of the commingled account.[12]  To this day, ENTERPRISE continues to hold itself out as the owner of PLAINTIFF's accounts and assets.

---

[9]   *See,* Declaration of PLAINTIFF.

[10]   *See,* Declaration of PLAINTIFF.

[11]   *See,* Declaration of PLAINTIFF.

[12]   *See,* Declaration of PLAINTIFF.

### E.    PLAINTIFF TERMINATES THE AGENCY AGREEMENT

The Agency Agreement provides at Paragraph 5 (1.): "This Agreement may be terminated by either party upon written notice to the other ... " On July 10th, 2007, PLAINTIFF revoked the Agency Agreement in writing.[13] However, DEFENDANTS continue to exercise control over PLAINTIFF's assets.

### F.    PLAINTIFF UNSUCCESSFULLY ATTEMPTS TO REMOVE HER ACCOUNTS FROM DEFENDANTS' CUSTODY AND CONTROL

Despite having terminated the Agency Agreement with ENTERPRISE in July 2007, PLAINTIFF has been attempting for several months, orally and by written notice, to transfer her brokerage accounts out of TRADERIGHT and ENTERPRISE, back into her individual name. PLAINTIFF's brokerage accounts have not been transferred out of DEFENDANTS' control, despite months of effort.[14]

In November 2007, only after extraordinary effort and threats to DEFENDANTS, PLAINTIFF's investments in Calvert New Vision Small Cap Fund and Calvert Social Investments Balanced Equity Fund were liquidated in their entirety. The trade confirmations stated that her funds were held in account owned by "Enterprise Trust Company c/o Enterprise Advisory Group." Thus, despite the revocation of ENTERPRISE's authority in July 2007, the trade confirmations of the Calvert Funds show that **ENTERPRISE is still exercising control over PLAINTIFF's assets.**[15] TRADERIGHT issued the trade confirmations, and is shown as the broker-dealer of record with Legent Clearing as the clearing firm.[16]

---

[13]    Attached to the accompanying Declaration of PLAINTIFF and marked as Exhibit "C" is a true and correct copy of the letter dated July 10, 2007, revoking the Agency Agreement.

[14]    *See* Declaration of PLAINTIFF. As only one example, it took PLAINTIFF's daughter over five months to transfer accounts out of ENTERPRISE to AG Edwards & Sons, Inc.'s Maryland offices.

[15]    Attached to the accompanying Declaration of PLAINTIFF and marked as Exhibit "D" are true and correct copies of the Calvert Funds trade confirmations.

[16]    *See,* Exhibit "D" to the Declaration of PLAINTIFF.

After receiving the trade confirmations, PLAINTIFF again notified DEFENDANTS that she had revoked any authority that DEFENDANTS held over any of her accounts, and again demanded that her funds be segregated from those of DEFENDANTS and be sent to direct holding at the respective mutual fund companies.[17]  These efforts have been unsuccessful and DEFENDANTS simply ignore PLAINTIFF's requests.[18]

PLAINTIFF believes that many of her former clients, many of them elderly, have been experiencing difficulties with DEFENDANTS identical to the problems that she is now experiencing.[19]

PLAINTIFF is gravely concerned about the safety of her funds, and those of her clients, held with DEFENDANTS — she is concerned that funds, representing the bulk of her net worth may continue to be concealed, controlled by DEFENDANTS and eventually disappear.

### G.    TRADERIGHT MISREPRESENTS PLAINTIFF'S STATUS TO HER CUSTOMERS

On or about November 15, 2007, TRADERIGHT sent a letter to all of AFC'S former clients in which it stated the following: "Your former representative [PLAINTIFF] has left the business to pursue other interests."  The letter also notified clients of AFC that a local service representative, Kimble Mason, had been appointed to act as their representative.[20]  In fact, PLAINTIFF has not left the securities business, nor is she pursuing other interests.  After terminating her relationship with both TRADERIGHT and ENTERPRISE, PLAINTIFF went back to her own broker-dealer, AFC.

PLAINTIFF is informed and believes that TRADERIGHT sent the letter stating that PLAINTIFF had left the securities business in retaliation for PLAINTIFF having filed an

---

[17]    See, Declaration of PLAINTIFF, and Exhibit "E" thereto.

[18]    See, Declaration of PLAINTIFF.

[19]    Attached to the accompanying Declaration of PLAINTIFF and marked as Exhibit "F" are true and correct copies of letters sent by PLAINTIFF's former clients to DEFENDANTS.

[20]    Attached to the accompanying Declaration of PLAINTIFF and marked as Exhibit "G" is a true and correct copy of a sample letter that was sent to AFC'S clients.