3.  I am 82 years old, and an "elder" pursuant to *California Welfare and Institutions Code* 15600, *et seq.* I have been in the securities business for 40 years. I started Advisory Financial Consultants (hereinafter "AFC") a broker-dealer in Fremont, California. I am a director, officer and shareholder of AFC. AFC is registered with FINRA, the securities industry self regulatory body formerly known as the NASD.

4.  In mid-2006 I was cold called by a business broker in Florida to sell my client base. In anticipation of slowing down and spending more time with my children and grandchildren, I agreed to sell my client base. I never intended on leaving the securities business entirely, only selling my client base. This was a hard decision for me since my clients, many of them elderly, have become like family to me and have been clients for many years.

5.  On December 20, 2006, on behalf of AFC, I entered into an Asset Purchase Agreement with TRADERIGHT and an entity named LOCKE HAVEN, whereby AFC transferred its client accounts, including my own personal accounts, to DEFENDANTS. These accounts generated substantial fees and what are called "back-end commissions." Attached hereto and marked as Exhibit "A" is a true and correct copy of the Asset Purchase Agreement.

6.  I understood and believed that TRADERIGHT, ENTERPRISE and LOCKE HAVEN were all the same entity — DEFENDANTS acted as if they were the same entity. Pursuant to the terms of the Asset Purchase Agreement, I also became a registered representative with TRADERIGHT.

7.  As part of the transfer, I was also required to sign an Investment Agency Agreement (hereinafter "the Agency Agreement"), which granted ENTERPRISE complete discretion and control over my accounts. Attached hereto and marked Exhibit "B" is a true and correct copy of the Investment Agency Agreement.

///
///
///
///

8. I was not represented by an attorney in connection with the transaction. I was not represented by counsel when I signed the Asset Purchase Agreement or the Agency Agreement. DEFENDANTS knew that I did not have counsel. There were no negotiations in connection with either agreement, nor was I involved in the preparation of either agreement. I believe the agreements were prepared by TRADERIGHT and ENTERPRISE.

9. I did not understand the Agency Agreement when I signed it. I trusted and relied on statements made to me by the DEFENDANTS during the transaction, particularly statements made by Rebecca Townsend, an Executive Vice President of ENTERPRISE and an owner and managing member of LOCKE HAVEN.

10. At the time of the transaction, Rebecca Townsend came to California, and met with AFC clients, including myself, and falsely represented to me that:

    a.    the Agency Agreement was a meaningless document;

    b.    that signing the Agency Agreement was a requirement to transfer my account to DEFENDANTS;

    c.    that the Agency Agreement was a mere legal formality without substantive effect; and,

    d.    that DEFENDANTS would obtain my permission before doing anything in my account.

11. I signed the Agency Agreement because DEFENDANTS fraudulently represented that it was a requirement to transfer my accounts from AFC to TRADERIGHT and ENTERPRISE. DEFENDANTS told me that my clients needed to sign the Agency Agreement. Knowing that I was elderly and without counsel, DEFENDANTS knowingly used the misrepresentations as stated herein and in the Verified Complaint to induce and take advantage of me, and to cause me, under false pretenses, to obtain the signatures of hundreds of my clients, many of them elderly, to the Agency Agreement thereby granting ENTERPRISE complete control over their accounts, as well as my own accounts.

///

12. DEFENDANTS gained complete control over all of my accounts and those of my clients who signed the Agency Agreement. Upon gaining control over the accounts, DEFENDANTS aggregated and commingled all the individual mutual fund accounts of AFC's clients, including my accounts, *into a single account in the name and under the control of ENTERPRISE*, rather than maintaining them separately in the name of each AFC client. I am informed and believe that DEFENDANTS have transferred to the name of "Enterprise Trust Company c/o Enterprise Advisory Group" all of my accounts, and those of hundreds of AFC clients who signed the Agency Agreement.

13. Without my authorization or notice to me, DEFENDANTS changed the automatic dividend reinvestment plans of my mutual fund accounts. DEFENDANTS canceled the standing instructions for dividends to be automatically be reinvested in the respective mutual funds — the mutual fund dividends and capital gains are now paid in cash. I am concerned that DEFENDANTS may be charging fees against the cash but in any event I have never been provided an accounting, despite repeated requests. I am informed and believe that DEFEDANTS have done the same with regard to hundreds of AFC clients who signed the Agency Agreement.

14. When I contacted mutual fund companies to obtain account information or to ascertain why my dividends were not being reinvested, the mutual fund companies would respond that they could not discuss the account because the individual client was not the account holder — *rather ENTERPRISE is the account holder of the commingled account, and the mutual funds can only respond to inquiries by the account holder.* Thus, ENTERPRISE is listed as the record owner of all my mutual funds and individual stocks. This represents the bulk of my net worth.

15. The Agency Agreement with ENTERPRISE provides at Paragraph 5. (1.) that: "This Agreement may be terminated by either party upon written notice to the other ...." On July 10, 2007, after learning for the first time that the Agency Agreement granted ENTERPRISE discretion over my accounts, I terminated the Agency Agreement in writing. Attached hereto and marked Exhibit "C" is a true and correct copy of my letter dated July 10, 2007, terminating the Agency Agreement.
GOMEZ DECLARATION IN SUPPORT OF T.R.O. AND PRELIMINARY INJUNCTION
- 4 -

16. Despite the fact that I terminated the Agency Agreement with Enterprise on July 10, 2007, to this day ENTERPRISE refuses to relinquish control of my assets and continues to treat those as assets as belonging to ENTERPRISE.

17. For months, I have been trying, without success, to transfer of my personal accounts out of TRADERIGHT and ENTERPRISE, and back into my individual name. My accounts have not been transferred out of DEFENDANTS' control, despite months of effort.

18. On November 26, 2007, only after extraordinary effort and threats through counsel to DEFENDANTS, my investments in Calvert New Vision Small Cap Fund and Calvert Social Investments Balanced Equity Fund were liquidated. The sale confirmations reflect that TRADERIGHT is the broker-dealer of record on the account and "Enterprise Trust Company c/o Enterprise Advisory Group" is the owner of the account. Attached hereto and marked Exhibit "D" are true and correct copies of Trade Confirmations that I received from TRADERIGHT.

19. After receiving the trade confirmations marked Exhibit "D," I again notified DEFENDANTS that I had revoked any authority that DEFENDANTS held over my accounts, and again demanded my funds be segregated from those of DEFENDANTS and be placed in my name alone at the mutual funds. Attached hereto and marked Exhibit "E" is a true and correct copy of correspondence sent on my behalf to DEFENDANTS on December 12, 2007.

20. DEFENDANTS refuse to take my assets out of their names and restore them to my name alone.

21. I am informed and believe that DEFEDANTS likewise refuse to take the assets out their names of hundreds of AFC clients who signed the Agency Agreement, and restore those clients' assets to their respective names alone. I am informed that it took my daughter, Dr. Dena M. Selby over five months to transfer her accounts out of ENTERPRISE to AG Edwards & Sons, Inc.'s Maryland offices.

///

///

22. I have repeatedly requested an accounting of all amounts charged me by ENTERPRISE. Requests for an accounting have been ignored. DEFENDANTS have also made repeated errors on my account statements.

23. Clients of mine, many of them elderly, who signed the Agency Agreement are having difficulties with DEFENDANTS identical to mine. Attached hereto and marked Exhibit "F" a true and correct copies of letters sent by my clients to DEFENDANTS.

24. On or about November 15, 2007, TRADERIGHT sent a letter to my former clients stating: "Your former representative [RUTHE GOMEZ] has left the business to pursue other interests." The letter also notified clients of AFC that a local service representative, Kimble Mason, had been appointed to act as their representative. Attached hereto and marked Exhibit "G" is a true and correct copy of TRADERIGHT'S letter dated November 15, 2007.

25. I have not left the securities business and the statements in the letter are false. I voluntarily resigned as a registered representative from TradeRight on July 19, 2007 and went back to AFC. When I did so, TradeRight falsely marked my Form U-5 that I violated internal rules regarding outgoing correspondence. The correspondence was drafted by DEFENDANTS.

26. I filed a Statement of Claim with FINRA regarding the above matters and other issues. Per Paragraph 22 of the Asset Purchase Agreement, all disputes relating to the Asset Purchase Agreement are to be determined by binding arbitration with the rules then in force of the NASD (now FINRA) *except in connection with an injunction, which may be sought in a court of law.* Based on the foregoing, I am respectfully seeking injunctive relief from this Court.

27. I will suffer grave and irreparable injury if my personal accounts are not restored to my name. I am afraid my funds will be dissipated or transferred out of the country and stolen. These funds represent a substantial part of my net worth and as of today they are held in the name of and controlled by ENTERPRISE and TRADERIGHT.

///

///

///

These facts are within my personal knowledge and if called as a witness I can competently testify thereto. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed by me, at Fremont, California, this 17 day of December, 2007.

*[signature]*
RUTHE GOMEZ
Declarant





EXHIBIT A

 

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (the "Agreement") is made and entered into on this 20th day of December, 2006, by and between Locke Haven, LLC, a limited liability company ("Locke Haven") with its principal place of business at 600 Enterprise Drive, Suite 220, Oak Brook, Illinois and Advisory Financial Consultants, Inc., a California corporation ("Advisory") with its principal place of business at 505 Durham Road, Fremont, California 94539-6603.

### RECITALS

A. Advisory is a broker/dealer duly registered and in good standing with the Securities and Exchange commission ("SEC") and as a member in good standing with the National Association of Securities Dealers, Inc. ("NASD") and the Securities Investor Protection Corporation ("SIPC").

B. The owners, officers and directors of Advisory are as follows: Ruthe Pessin Gomez-President, Vice President, Secretary, Treasurer and 52% Shareholder; Cathy D. Berwaldt-Director and 16% Shareholder; Julian E. Gomez-Director and 16% Shareholder; Dena M. Selby, Director and 16% Shareholder.

C. The owners and managing members of Locke Haven are as follows: John Lohmeier and Rebecca Townsend and Mike Rukujzo and George Dragel.

D. Ruthe Pessin Gomez ("Gomez") in her capacity as the President of Advisory and registered Series 24 General Securities Supervisory Principal ("24 GSP") has the full authority to enter into this Agreement and to consummate the transactions contemplated herein.

E. Advisory is presently conducting a brokerage business and as such its assets include, but are not limited to; (i) certain customer accounts of approximately $103,000,000.00 in value (the "Customer Accounts"), approximately 90% of which are mutual fund accounts (the "Mutual Fund Accounts") and 10% of which are variable annuity accounts (the "Variable Annuity Accounts") and/or others (collectively the "Customer Accounts") and (ii) 12b-1 residual trail commissions arising from the Customer Accounts of approximately $200,000 – $250,000 per annum (the "Trail Commissions"), all as itemized on Exhibit "A", not yet delivered.

F. TradeRight Corp. d/b/a TradeRight Securities, Inc. (TradeRight) is a broker/dealer duly registered and in good standing with the Securities and Exchange commission ("SEC") and is a member in good standing with the National Association of Securities Dealers, Inc. ("NASD") and the Securities Investor Protection Corporation ("SIPC").

G. The owners, officers and directors of TradeRight are as follows: Financial Networks Group, Inc. (100%), Michael Rukujzo, President & CEO (0%), Christopher Wirtzinger, CCO & Secretary (0%).

Initials:   JL _JL_   MR _mr_   RT _RT_   GD _GD_   CW _CW_
            RG _RG_   CB _CB_   JG _JG_   DS _DS_

H. Advisory and Ruthe Gomez agree to give Locke Haven and/or TradeRight access to all client information and it will be the responsibility of the buyers to copy and collate the information necessary for the transition. While the responsibility of organizing and assembling the client information belongs to the Buyer, Advisory wishes to sell, assign and transfer (the "Sale") to Locke Haven and/or TradeRight, and Locke Haven wishes to purchase from Advisory (i) the Customer Accounts, (ii) the Trail Commissions, (iii) other commissions and revenues (the "Revenues") derived and to be derived from investments (the "Investments") maintained in the Customer Accounts by the customers (the "Customers") of Advisory and (iv) all existing Customer Records, Customer Account Records, Account Forms, Lists, Files and Pertinent information for such Customers including, but not limited to, names, addresses, Social Security numbers, phone numbers, account numbers and copies of any correspondence with such Customers, marketing systems used or developed by Advisory and Advisory's ongoing business and good will (collectively the "Customer Records") (the "Customer Accounts, Trail Commissions, Revenues, and Customer Records hereinafter collectively referred to as the "Assets") (the Locke Haven Assets being hereinafter collectively referred to as the "Assets").

I. In furtherance of the Sale of the Assets, Advisory wishes to (i) assist TradeRight in establishing a relationship with both the Customers of Advisory and Advisory's Registered Representatives enumerated on Exhibit "A" annexed hereto, who are assigned to the Customer Accounts and (ii) use all its reasonable efforts to encourage all of the Registered Representatives to register in such capacity with TradeRight and execute TradeRight's Registered Representative Agreement in the form annexed hereto as Exhibit "B".

J. Advisory will retain all other assets of Advisory not expressly transferred and/or assigned to Locke Haven and/or TradeRight pursuant to this Agreement.

K. Advisory and Traderight are not merging or consolidating into a single broker dealer as a result of this Agreement. After the transfer of the Assets from Advisory to Traderight Securities, the broker dealer of record for all assets purchased by Locke Haven, Advisory will remain and continue as a separate and distinct entity from Traderight Securities and Locke Haven. Advisory will cease to conduct business as a Dealer in Mutual Funds and Mutual Funds will be re registered to reflect Traderight as broker dealer of record, held by Enterprise Trust Company as custodian, and owned by Locke Haven.

L. Advisory shall retain, and be solely liable for, all liabilities, legal and equitable, relating in any way to the Customers and/or Customer Accounts if such liability arises from or relates to any act, omission, representations or violation of law that occurred on or prior to the transfer of the Customer Accounts to TradeRight.

M. In consideration of Advisory's performance of same's obligations pursuant to this Agreement, Locke Haven shall pay to Advisory the Purchase Price for the Advisory customer Accounts.

Initials: JL____ MR____ RT____ GD____ CW____
RG____ CB____ JG____ DS____