THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the Parties, the Parties agree as follows:

1. **Recitals.** The foregoing Recitals are true and correct and same are incorporated herein by reference.

2. **Business Assets.** On or before December __20th__, 2006, the Parties shall cause the closing relevant to this Agreement to occur (the "Transfer Date"). On the Transfer Date, Advisory shall take such reasonable steps as required to:

   a. Transfer (the "Transfer") to Traderight as broker dealer of record, respectively all of the Assets to which Locke Haven is entitled hereunder including, without limitation, the transfer to TradeRight of the Customer Accounts, together the existing Customer records, Customer Account records, account forms, lists, files and ALL other records used by Advisory in connection with the approximately $103,000,000 in value of Customer Accounts, including, without limitation, names, addresses, Social Security numbers, phone numbers, account numbers, copies of all customer correspondence, customer Account Forms and other agreements with customer, all other relevant agreements, marketing systems used or developed by Advisory and Advisory's ongoing business, goodwill and all Trail Commissions and other Revenues derived or to be derived from the Customer Accounts or otherwise and the continued assistance of Advisory in the transition of the Customers and the Customer Accounts when needed. Traderight and Locke Haven shall permit Advisory access to said Customer files for regulatory purposes within three business days of Advisory's request.

   b. Assign to Traderight, as broker dealer of record, all Trail Commissions, 12-b1 fees, residuals and other Revenues (collectively the "Revenues") derived and to be derived from the Investments maintained in the Customer Accounts by Customers of Advisory consisting of approximately __90__ % in Mutual Funds and approximately __10__ % in Variable Annuities.

   c. Use all reasonable efforts to encourage all of Advisory's Partners LLC (LLC) Registered Representatives to register in such capacity with Traderight and execute Traderight's Registered Representative Agreement in the form annexed hereto as Exhibit "B". To effectuate the NASD registration of all of Advisory's Registered Representatives as brokers affiliated with Traderight, the Transfer of all Mutual Fund and Variable Annuity customer Accounts is to be structured by the parties as, and considered by them to be, a "bulk transfer" or "mass transfer" pursuant to such regulations. Traderight reserves the right in its sole discretion to accept or reject any or all of the applications of such Registered Representatives or place production requirements on any or all of them.

Initials: JJ __/s/__  MR __/s/__  RT __/s/__  GD __/s/__  CW __/s/__
RG __/s/__  CB __/s/__  JG __/s/__  DS __/s/__

d. **Liabilities of Advisory.** Advisory shall convey no liabilities to either Locke Haven or TradeRight and neither Locke Haven nor TradeRight shall accept or assume liabilities of any kind from Advisory. Advisory retains all liabilities of or related to the Customers, Customer Accounts and the Revenues based upon transactions, actions, representations, omissions, or inactions that occurred prior to the Transfer Date including, without limitation, any and all liabilities associated with Customer employment or regulatory claims, arbitration filings, and legal or equitable actions of any sort brought against Advisory or affiliated persons regardless of whether such claims or actions are currently pending or unknown and brought subsequent to the Transfer Date of this Agreement which shall be the sole responsibility of Advisory.

e. The parties hereto acknowledge that after Transfer of the Customer Accounts by Advisory to TradeRight, the Locke Haven owners of such Customer Accounts have the right, subject to applicable NASD and other laws, rules and regulations, to cause their Customer Accounts to be held by a custodian by notification by them in accordance with applicable requirements including, without limitation, the contemplated designation of Enterprise Trust Company, a Nevada corporation ("Enterprise" or the "Custodian") and an affiliate of Enterprise located at 1489 West Warm Springs Road, Suite 110, Henderson, Nevada, 89104 and a chartered trust company established under applicable State of Nevada laws, rules and regulations to serve as Custodian of the transferred Assets.

3. **Locke Haven Purchase Price and Method of Payment.** The Locke Haven Purchase Price to be paid by Locke Haven to Advisory is $450,000 payable as follows:

   a. $225,000 payable upon completion of Advisory's Transfer of all of the Assets to TradeRight.

   b. The Purchase Price balance of $225,000 is to be paid by Locke Haven to Advisory in no greater time than one (1) year from the Transfer Date, subject to Advisory's prior completion of the Transfer of all of the Assets to TradeRight, and then into the custody of Enterprise Trust Company. If the transfer of a majority of the assets, as determined by the Buyer, has taken place prior to the one year date of December 20, 2007 then the full and remaining balance will be paid to Advisory. An amount of $25,000 each quarter, beginning with March 31st, 2007 will be held in escrow by Buyer to be held toward the final payment due and payable on December 20, 2007.

4. **Representations and Warranties of Advisory.** Understanding that Locke Haven and TradeRight will be relying upon Advisory' representations and warranties, Advisory hereby represents and warrants to Locke Haven as follows:

   a. Advisory has the right, power and authority to enter into this Agreement and consummate the transactions as herein contemplated.

Initials:  JL [sig]  MR [sig]  RT [sig]  GD [sig]  GW [sig]
          RG [sig]  CB [sig]  JG [sig]  DS [sig]

b. The execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby by Advisory have been duly authorized by all necessary actions and proceedings of Advisory, and this Agreement is the legal, valid and binding obligation of Advisory enforceable against Advisory in accordance with its terms.

c. Neither the execution and delivery of this Agreement by Advisory nor the consummation of the transactions contemplated hereby by Advisory will (i) violate the Articles of Incorporation or By-laws of Advisory, (ii) violate or constitute a breach of any contract of which Advisory is named and signatory party, (iii) violate any order, judgment or decree to which Advisory is named and subject to, or (iv) result in the creation or imposition of any legal and binding lien, claim, charge or encumbrance upon the Assets that are transferred and assigned pursuant to this Agreement.

d. There are no pending claims for Damages (as that term is defined in Paragraph "8") against Advisory.

e. There are approximately _____ $103,000,000 in value of _____ Customer Accounts and the Trail Commissions and other Revenues are, in aggregate, not less than between $250,000-$275,000 per annum.

f. As of the date hereof Advisory has obtained all necessary NASD approvals for its sale, assignment and transfer of the customer accounts to TradeRight respectively and all other required regulatory approvals, if any.

5. **Representations and Warranties of Locke Haven.** Understanding that Advisory will be relying upon Locke Haven's representations and warranties, Locke Haven hereby represents and warrants to Advisory as follows:

a. The execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby by Locke Haven have been duly authorized by all necessary actions and proceedings of Locke Haven, and this Agreement is the legal, valid and binding obligation of Locke Haven and is enforceable against Locke Haven in accordance with its terms.

b. Neither the execution and delivery of this Agreement by Locke Haven nor the consummation of the transactions contemplated hereby by Locke Haven will (i) violate the Certificate of Formation or By-Laws of Locke Haven, (ii) violate or constitute a breach of any contract to which Locke Haven is a named and signatory party, or (iii) violate any order, judgment or decree to which Locke Haven is named and subject to.

Initials: JL____ MR____ RT____ GD____ CW____
RG____ CB____ JG____ DS____

5

    c.  Locke Haven has the right, power and authority to enter into this Agreement and consummate the transactions as herein contemplated.

6. **Representations and Warranties of Traderight.** Understanding that Advisory will be relying upon Locke Haven's representations and warranties, TradeRight hereby represents and warrants to Advisory as follows:

    a.  The execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby by TradeRight have been duly authorized by all necessary actions and proceedings of TradeRight and this Agreement is the legal, valid binding obligation of TradeRight enforceable against TradeRight in accordance with its terms.

    b.  Neither the execution and delivery of this Agreement by Locke Haven nor the consummation of the transactions contemplated hereby by Traderight will (i) violate the Articles of Incorporation or By-Laws of TradeRight; (ii) violate or constitute a breach of any contract to which Locke is a named and signatory party; or (iii) violate any order, judgment or decree to which TradeRight is named and subject to.

    c.  TradeRight has the right, power and authority to enter into this Agreement and consummate the transactions as herein contemplated.

7. **Further Assurances.** Form the date hereof until all obligations pursuant to this Agreement have been fulfilled, and as are reasonable and customary and not involving undue expense, Advisory and TradeRight shall each provide such information, take such action and make, execute and deliver such instruments, consents and certifications as (i) the NASD, SEC and/or other regulatory authorities may require for effectiveness and completion of the Transfer of the Assets as provided herein and (ii) is appropriate to Transfer the Customer Accounts of the Registered Representatives. All Transfers of the Customer Accounts and assignment of the Revenues from the Investments by Advisory to TradeRight Securities as broker dealer of record will be taken in compliance with applicable NASD rules and regulations the Rules of the SEC and The Rules of the Fed.

8. **Costs.** Traderight Securities, as broker dealer of record for Locke Haven, shall be responsible for the normal fees for licensing permits, notices, etc. incurred by either party in connection with the transfer of the customer accounts and/or "bulk transfer" fees, if any, incurred and payable to the NASD and for an initial one (1) year period only commencing on the Transfer Date normal fees for transfer and licensing of those transferred Registered Representatives of Advisory including Form U-4, Form U-5 and State Registrations.

Initials: JL ___ MR ___ RT ___ GD ___ CW ___
        RG ___ CB ___ JG ___ DS ___

6

9. **Continuing Operations.** From the date of Traderight's execution of this Agreement as broker-dealer of record, through and including the date one (1) year from the Transfer Date, Traderight shall use its commercially reasonable efforts to (i) comply with the laws and regulations of the Regulatory Authorities; (ii) subject to the terms and provisions of the Registered Representative Agreements annexed hereto as Exhibit "B", retain the Registered Representatives consistent with general Traderight company policies and practices; and (iii) shall be and remain both (a) a member in good standing with the NASD and (b) registered with the SEC as a broker-dealer.

10. **Documents to be delivered by Advisory.** Advisory shall deliver to Locke Haven and/or Traderight as applicable on or prior to the Transfer Date the following documents:

    a. NASD Forms U-4 and U-5 for each of the transferred Registered Representatives, executed by Advisory and the transferred Registered Representatives, corporate human resources files and regulatory files;

    b. A certificate executed by Ruthie Gomez as the President of Advisory certifying that any notices or filings with, or comments of, and required approvals by the NASD, SEC, and/or other regulatory authorities required for the execution and delivery of this Agreement by Advisory and the Transfer of the Assets hereunder have been obtained (the "Advisory Closing Certificate").

    c. As soon as this agreement is signed, letters to each fund and annuity company will be drafted and sent to effect the transfer of all Advisory assets. Locke Haven will work with Advisory to obtain documentation for each client. New agreements will be executed by the customers to facilitate the transfer and custody of client accounts to Enterprise Trust Company.

    d. 12/31/05 Audited Focus Reports

    e. Unanimous Consents of both Advisory's Directors and Shareholders.

Initials: JL___ MR___ RT___ GD___ CW___
RG___ CB___ JG___

7

11. **Indemnification by Advisory.**
   a. Except as otherwise provided in this Agreement, from and after the Transfer Date, Advisory and Ruthe Gomez, individually, jointly, and severally, shall hold harmless and indemnify TradeRight and Locke Haven, its shareholders, officers, directors, control persons, agents and employees, (hereinafter jointly the "Indemnified Parties") from and against, and shall compensate the reimburse that the Indemnified Parties for any Damages which are suffered or incurred by the Indemnified Parties or to which the Indemnified Parties may otherwise become subject and which arise from or as a result of, or are connected with: (i) any inaccuracy in or breach of any representations or warranties of Advisory set forth in Paragraph "7." Or in the Advisory Closing Certificate; (ii) any material breach of any covenant or obligation of Advisory provided in this Agreement; (iii) any legal, regulatory or administrative proceeding brought by a third party unaffiliated with the Indemnified Parties relating to any inaccuracy or breach of the type referred to in clause "(i)" or "(ii)" above; (iv) any claims by Customers of Advisory arising out of transactions in the Customer Accounts or in the Investments made or for any other reason for matters which occurred prior to the Transfer of the Accounts; and/or (v) any third party claims to the extent they arise from actions or omissions by Advisory generally. For purposes of this Agreement "Damages" shall mean any and all liabilities, obligations, losses, damages, penalties, demands, claims, actions, suits, judgments, settlement, penalties interest, out-of-pocket costs and disbursements (including investigations and legal expenses).

12. **Indemnification by Traderight and Locke Haven**
   a. Except as otherwise provided in this Agreement, from and after the Transfer Date, Traderight and Locke Haven shall hold harmless and indemnity Advisory, its shareholders, officers, directors, control persons, agents and employees (hereinafter jointly the "Advisory Indemnified Parties") from and against, and shall compensate and reimburse the Advisory Indemnified Parties for any Damages which are suffered or incurred by the Advisory Indemnified Parties or to which the Advisory Indemnified Parties may otherwise become subject and which arise from or as a result of, or are connected with: (i) any inaccuracy in or breach of any representation or warranty set forth in Paragraph "5." Or in the Traderight and Locke Haven Closing Certificate; (ii) any material breach of any covenant or obligation of TradeRight and Locke Haven provided in this Agreement; or (iii) any legal, regulatory or administrative proceeding brought by a third party unaffiliated with the Advisory Indemnified Parties relating to any inaccuracy or breach of the type referred to in clause "(i)" or "(ii)" above; (iv) any claims of customers of Traderight and Locke Haven arising out of transactions in the Customer Accounts occurring after the Transfer of the Customer Accounts or arising out of additional Investments occurring after the Transfer of the Customer Accounts; and/or (v) any third party claims to the extent they arise from actions or material omissions by Traderight and Locke Haven generally.

Initials: JL___ MR___ RT___ GD___ CW___
RG___ CB___ JG___ DS___

13. **Non-Competition Covenant of Advisory.** For a period of seven (7) years from the Transfer Date Advisory, its officers, directors, employees or any successor in interest, shall not directly or indirectly solicit the business of any Customer of Advisory whose Customer Account was transferred to TradeRight hereunder or whose Trail Commissions and other Revenues were assigned to TradeRight hereunder including, without limitation, Advisory shall not directly or indirectly solicit the purchase or sale of securities with any of such Customers.

14. **Notice.** Notice given by or to the attorney for either Party shall be effective as if given by or to the Party. Notices shall be given as follows:

If to Locke Haven:     Attention: Becky Townsend, Partner
                       600 Enterprise Drive, Suite 220
                       Oak Brook, Illinois 60523

If to Advisory:        Advisory Financial Consultants, Inc
                       Attn: Ruthe Pessin Gomez, President
                       505 Durham Road
                       Fremont, California 94539-6603

If to TradeRight       TradeRight Securities, Inc.
                       Attn: Michael Fukuizo
                       123 East 9th Street
                       Lockport, IL 60441

Any party may designate in writing another address for receipt of notice. Notice shall be given by certified mail, return receipt requested and/or by hand. Any notice shall be deemed to have been given as of the date of delivery, if hand delivered, or as of three (3) days after the date of mailing if mailed within the continental United States, postage prepaid.

15. **Entire Agreement.** This document contains the entire agreement between the Parties, and supersedes all prior negotiations, representations or agreements among the Parties. No other agreement shall be binding upon or enforceable against Advisory, TradeRight, and Locke Haven and any modification or amendment of this agreement must be in writing singed by all Parties to this Agreement.

16. **Representations.** Each party to this Agreement acknowledges that no representations, inducements, promises or agreements, oral or otherwise, have been made by any party, or anyone acting on behalf of any party, which are not embodied herein, and that no other agreement, statement or promise not contained in this Agreement shall be valid or binding.

Initials: JL ___  MR ___  RT ___  GD ___  CW ___
          RG ___  CB ___  JG ___  DS ___

9

17. **Waiver, Estoppel, and Defense Limitation.** All waivers of any rights provided by this Agreement or by law relevant to any breach or default by a party shall be required to be in writing and signed by both parties hereto. No waiver of any breach of this Agreement shall be held to be a waiver of any other or subsequent breach. The failure of any party to enforce at any time any of the provisions of this Agreement, or to exercise any option which is hereby provided, or to require at any time performance by another party of any of the provisions hereof, shall in no way be construed to be a waiver or create an estoppel from enforcement of such provisions, nor in any way affect the validity of this Agreement or any part hereof, or the right of such party to thereafter enforce each and every such provision, or to seek relief as a result of the prior breach.

18. **Severability.** If any part of this Agreement is held to be invalid or enforceable, such holding shall not affect any other part of this Agreement that can be given binding affect. If, moreover, any party of this Agreement is for any reason held to be excessively broad as to activity, subject, or for any other reason, it shall be construed by limiting or reducing it, or by adding a provision as similar to such unenforceable provision as may be possible so as to be legal, valid, and enforceable to the maximum extent necessary for the protection of the parties.

19. **Construction.** There shall be no inference, by operation of law or otherwise, that any provision of this Agreement shall be construed against either party. This Agreement shall be construed without regard to the identity of the Party that drafted the various provisions hereof. Moreover, each and every provision of this Agreement shall be construed as through all Parties hereto participated equally in the drafting thereof. As a result of the foregoing, any rule of construction that a document is to be construed against the drafting party shall not be applicable.

20. **Attorney's Fees and Costs.** In the event it becomes necessary for any Party to seek legal means to enforce the terms of this Agreement, the non-prevailing party shall be liable for all reasonable attorney's fees, paralegal and law clerk fees, sales taxes, travel expenses, deposition costs, expert witness expenses and fees, and any other cost of whatever nature reasonably incurred by the prevailing party as an incident to the prosecution or defense of such action, or in any post judgment or collection proceeding, including, attorney's fees and costs incurred in any attempt to recover the amounts due, plus court costs.

21. **Persons Bound.** This Agreement shall inure to the benefit of and be binding upon the Parties hereto and their respective heirs, personal representatives, successors and assigns. Whenever required by the context, the singular shall include the plural, the plural the singular, and the use of any gender shall include both genders. The provisions of this Agreement shall survive the performance of this Agreement.

Initials: JL____ MR____ RT____ GD____ GW____
RG____ CB____ JG____ DS____

10

22. **Jurisdicton/Interpretation.** This Agreement shall be governed by and interpreted in accordance with the laws of the State of Illinois. Disputes between Locke Haven, TradeRight and Advisory and the Indemnified Party and/or any Advisory Indemnified Party arising out of, in connection with or in relation to this Agreement or the sale of the Assets contemplated by this Agreement or in relation to any alleged breach hereof or thereof, shall be finally determined by binding arbitration in accordance with the rules then in force of the NASD, except in connection with an injunction, which may be sought in any court of law with jurisdiction. The NASD arbitration proceedings shall take place in Chicago or such other location as the parties in dispute hereafter may, in writing, mutually agree upon. The decision rendered by the arbitrator or arbitrators shall be accompanied by a written opinion in support thereof. Such decision shall be final and binding upon the parties in dispute without right of appeal. Judgment upon any such decision may be entered into in any court having jurisdiction thereof, or application may be made to such court for a judicial acceptance of the decision and any order of enforcement.

23. **Paragraph Headings; Legal Review.** The paragraph headings have been used solely for convenience and shall not be used to interpret this Agreement.

24. **Due Diligence.** Upon signing this Agreement the respective parties hereto shall conduct the requisite due diligence review. Subject to completion of the due diligence review, the Transfer Date will be held as soon as the respective parties hereto determine that it is feasible but not later than December 28th, 2006, subject to extension in writing by both of the parties hereto. In the event the Customer Accounts are not transferred by Advisory to Locke Haven as herein provided Locke Haven will not thereafter use or disclose any customer lists or other non-public information provided to Locke Haven as to those Customer Accounts not so transferred and all customer documents as to those Customer Accounts not so transferred shall be returned.

25. Each party hereto represents to the other that it has consulted with independent legal counsel of its own choosing.

26. **Counterparts.** This Agreement may be executed in multiple counterparts and on facsimile paper and by facsimile transmission as necessary. When each of the parties has signed and delivered at least one such counterpart, each counterpart will be deemed an original and, when taken together with the other signed counterpart(s), shall constitute one fully executed copy of this Agreement, which shall be binding upon and effective as to the parties according to its terms.

27. **Time.** Time is of the essence with regard to the matters set forth herein.

Initials: JL _____ MR _____ RT _____ GD _____ OW _____
RG _____ CB _____ JG _____ DS _____

11