I, Rebecca Townsend, declare:

1. I have personal knowledge of the facts set forth below and if called as a witness could and would testify competently to those facts.

2. I submit this declaration in response to a legal action that I understand is about to be filed with this Court by Ruthe P. Gomez. I understand that Ms. Gomez seeks to transfer her personal accounts from Enterprise Trust Company ("Enterprise") to AG Edwards. As set forth below, my company and I are fully able and agreeable to transfer Ms. Gomez's accounts, but first she must provide Enterprise with the necessary written transfer authorization and direction. As soon as Ms. Gomez does so, Enterprise will immediately commence the transfer process with AG Edwards so that the equities and mutual funds held on behalf Ms. Gomez can be registered with AG Edwards instead of Enterprise.

3. Enterprise is an independent, Nevada-chartered trust company, with a home office in Henderson, Nevada, and an administrative office in Oak Brook, Illinois. I am the Vice President of Enterprise and the main client manager. I report to John Lohmeier, the President of Enterprise, who has been in the trust business for over twenty years.

4. I first became acquainted with Ms. Ruthe Gomez in connection with a December 2006 acquisition of Advisory Financial Consultants, Inc. ("AFC"), a financial broker dealer firm owned and operated by Ms. Gomez. I am familiar with the acquisition of AFC by Enterprise and TradeRight Securities ("TradeRight"), a registered broker-dealer.

5. After an Asset Purchase Agreement was executed, the first payment of $225,000 was made to Ms. Gomez and the transition of the client accounts from AFC to Enterprise began. Ms. Gomez became a registered representative of TradeRight at that time.

6. During the first half of 2007, Ms. Gomez became unhappy with the acquisition of AFC by TradeRight and Enterprise, as well as the amount of contact TradeRight and Enterprise were required to have with the former AFC clients. These contacts were necessary, for among other reasons, in order to procure documents necessary for full and complete regulatory compliance and disclosure.

7. During this same time period, I learned that Ms. Gomez had been making false and disparaging remarks about Enterprise and TradeRight to former AFC clients. Ms. Gomez also refused to comply with the terms of the Asset Purchase Agreement and, in further violation of this agreement, attempted to thwart the transition of client accounts to Enterprise. Ms. Gomez even became suspicious of her longtime assistant and fired her, calling the Fremont police to remove her from AFC's offices.

8. On June 13, 2007, Ms. Gomez sent a letter to FINRA — the successor to NASDAQ — falsely accusing Enterprise and TradeRight of "black mail." (A true copy of this June 13, 2007 letter is attached as Exhibit 1.)

9. In July 2007, Ms. Gomez resigned her position as a registered representative of TradeRight. (A true copy of Ms. Gomez' July 19, 2007 letter is attached as Exhibit 2.)

10. In August 2007, Ms. Gomez sent a letter to all of the former AFC clients whose accounts were sold to Enterprise, indicating that she was moving to a new firm and that she desired to move her personal accounts from Enterprise. (A true copy of Ms. Gomez' August 17, 2007 letter is attached hereto as Exhibit 3.) In October 2007, Ms. Gomez sent letters to former AFC clients in a further wrongful attempt to solicit them away from Enterprise. (A true copy of this October 16, 2007 letter is attached as Exhibit 4.) Ms. Gomez also made false statements and allegations concerning Enterprise to regulatory agencies, including the Securities and Exchange Commission ("SEC"), and then sent out a letter to all of her former clients with a copy of her complaint letter to the SEC.

11. In August 2007, Ms. Gomez' counsel contacted Enterprise and requested that her funds held in accounts administered by Enterprise be transferred. I promptly advised Ms. Gomez and her counsel that Enterprise would begin the process to transfer her requested accounts as soon as Ms. Gomez completed and provided to Enterprise the appropriate Account Transfer forms, signed by both Ms. Gomez and the accepting new custodian. (A true copy of my August 13, 2007 letter to Ms. Gomez advising her of the requirements for transferring her accounts is attached hereto as Exhibit 5.) Mutual fund and equity accounts held by trust companies cannot be transferred without the necessary authorizations and instructions to ensure that the assets are

properly registered in the appropriate account at the appropriate custodian. A separate, signed Account Transfer form is required for each account to be transferred. Since Ms. Gomez has nine separate accounts at Enterprise, we need to receive nine separate, fully completed and signed Account Transfer forms.

12. On or about October 2, 2007, Enterprise received a completed Account Transfer form from Ms. Gomez, directing that one of her nine Enterprise accounts — the account which holds her stock equity positions — be transferred to AG Edwards. (A true copy of this Account Transfer form, with redactions, is attached hereto as Exhibit 6.) My assistant immediately contacted her AG Edwards agent, Ms. Yasmin Johnson, and, while I was also on the telephone, advised her that to complete the transfer, we would need to charge Ms. Gomez the customary transfer fee. Ms. Johnson told us that prior to proceeding with the transfer, she first would need to confirm this fee with Ms. Gomez and would then contact us with authorization to proceed with the transfer of the equity account. We have never heard back from Ms. Johnson and so we have not completed the transfer of this equity account to AG Edwards.

13. On or about October 18, 2007, Ms. Gomez' daughter, Ms. Dena Selby, sent Enterprise a fully completed and executed Transfer Account form to transfer her brokerage account from TradeRight to AG Edwards. (A true copy of Ms. Selby's Account Transfer form, with redactions, is attached hereto as Exhibit 7.) After receipt of the fully executed transfer paperwork signed by both Ms. Selby and a representative of AG Edwards, Enterprise commenced the process of transferring the funds in the account to AG Edwards for the Selby family. As confirmed by my letter, as of November 19, 2007, all but two of the funds in Ms. Selby's account had been successfully transferred and registered with AG Edwards. (A true copy of my letter of November 19, 2007, without attachments, is attached as Exhibit 8.) Enterprise has now completed the transfer of all the funds in the Selby account to AG Edwards.

14. I understand that Ms. Gomez wishes that all nine of her accounts at Enterprise be transferred to AG Edwards. Enterprise fully desires to accomplish these transfers as soon as possible. But to do so, Enterprise must receive Account Transfer documents, signed by both Ms. Gomez and AG Edwards, for each of the remaining eight accounts that Enterprise holds for Ms.

1 Gomez. I have repeatedly asked Ms. Gomez and her counsel to provide these fully completed and executed Account Transfer forms, but other than for the one equity account, they have not done so. Trust companies require these authorization forms in order to ensure that the assets are properly registered in the appropriate account at the appropriate custodian.

15. With regard to the one Gomez equity account for which Enterprise has received the appropriate Account Transfer form, but for which it has not received authorization to proceed and charge the customary fee, Enterprise will regard this lawsuit as authorization to proceed with the transfer. Unless Enterprise is instructed otherwise by Ms. Gomez or her counsel, it will proceed with the transfer and re-registration of Ms. Gomez' equity account, and will charge the customary .25% fee against Ms. Gomez' account.

16. As a certified financial planner and investment advisor for over forty years, Ms. Gomez knows of the manner in which trust companies hold assets and the process necessary to transfer or re-register customer accounts with a new custodian. She is well aware that each separate account requires a separate Account Transfer form in order to complete the transfer and re-registration process.

17. There is no need for this suit or to burden the Court with plaintiff's requests. Ms. Gomez simply needs to provide Enterprise with the completed Account Transfer forms for each of her remaining eight Enterprise accounts, signed by AG Edwards and her. Upon receipt of these documents, Enterprise will immediately commence the transfer process and work with AG Edwards to complete it as soon as possible.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on December 19, 2007, at Oak Brook, Illinois.

*Rebecca Townsend*
Rebecca Townsend

1

## *Advisory Financial Consultants, Inc.*
505 DURHAM ROAD • FREMONT, CALIFORNIA 94539-6698 • (510) 656-1357

June 13, 2007

Mr. Christian Zrull
National Assn. of Broker Dealers
1 Montgomery Street, Suite 2100
San Francisco, CA   94104

Dear Mr. Zrull,

Please do not hesitate to discard any of the enclosed documents if they are not important in this investigation.

For your information, my clients and I who are now with TradeRight Securities have yet to receive a statement of their holdings since we started operations in January.  The Enterprise Trust Co. and TradeRight are projecting July when statements will finally be sent to investors.

Before joining the Enterprise Trust Co., I was assured, as were the brokers with me at the time, that absolutely no fees would be charged to our investors.  Now, an investor who recently pulled out his account, lost 3% of the value of his assets as a penalty.

I requested the the accounts of my family members be changed to my name as the servicing broker.  Previously, my son, who is not in the business anymore, was the servicing broker.  I was told that TradeRight Securities, the broker-dealer who now services my former clients' accounts, will not change my family's accounts to me as servicing broker until Enterprise allows them to do so. Therefore, I am not receiving any 12B1 commissions on my own or on my family accounts.  The Enterprise People are saying I must do certain jobs (?) before they will allow TradeRight to credit me with 12B-1 fees, "Blackmail?"

One of my former Reps. who signed up with TradeRight is not receiving the percentage commissions promised to him.  They are paying him less than the agreed-upon rate.

Yet, at the first meeting with all of my Regular Reps. in our office here in Fremont, John Lohmeier and Rebecca Townsend, the principals of the trust company were specifically asked if there would be any fees to our investors who wanted to withdraw assets. They both emphatically answered "NO!"

Registered Investment Advisor



*Affiliated with TradeRight Securities Corp.*

(510) 658-1357

Last week I had to dismiss my office helper. She has confidential access to my clients' accounts. I hope she will not cause problems. (She is having personal problems.)

Very Truly Yours,

Ruthe P. Gomez
Advisory Financial Consultants, Inc.

Registered Investment Advisor

Affiliated with TradeRight Securities Corp.

2

P.01

PATRICK BALDWIN
CHRISTOPHER P. MADER

**BALDWIN LAW GROUP**

530 OAK GROVE AVENUE
SUITE 207
MENLO PARK, CALIFORNIA 94025
TEL (650) 326-9195

FAX (650) 326-0467

OF COUNSEL
MICHAEL C. MILLER

*Via Facsimile Only*

July 19, 2007

TradeRight Securities, Inc.
Attn: Michael Rukujzo and Christopher Wurtzinger
123 E. 9th Street, Suite 1A
Lockport, IL 60441

RE:   Ruthe P. Gomez / Advisory Financial Consultants, Inc.

Dear Messrs. Rukujzo and Wurtzinger:

Effective immediately, Ms. Ruthe P. Gomez hereby resigns as an independent contractor registered representative with TradeRight Securities, Inc.

Please acknowledge your receipt of this letter as soon as possible. We will send to you shortly via overnight delivery the original of this document. Please feel free to telephone me should you have any questions.

Sincerely,

*C P Mader for*

Patrick Baldwin

Effective immediately, I hereby resign as an independent contractor registered representative with TradeRight Securities, Inc.

_Ruthe P. Gomez_              7-19-07
Ruthe P. Gomez                Date

cc:   Enterprise Trust Company, *Via Facsimile and Overnight Delivery*
      600 Enterprise Drive, Suite 220
      Oak Brook, IL 60523